No. 25-2231

# United States Court of Appeals for the Seventh Circuit

Nikko D'Ambrosio,

*Plaintiff-Appellant,*

v.

Abbigail Rajala, Carol Rajala, Rodney Rajala, Paola Sanchez, Blake Milbrand, Meta Platforms, Inc., and Spill the Tea, Inc.,

*Defendants-Appellees.*

On Appeal from the United States District Court for the Northern District of Illinois, Case No. 1:24-cv-678 The Honorable Sunil R. Harjani

**DEFENDANTS-APPELLEES
SPILL THE TEA, INC., PAOLA SANCHEZ,
and BLAKE MILBRAND'S RESPONSE BRIEF**

October 14, 2025

Amanda N. Catalano
Megan E. Ryan
TABET DIVITO & ROTHSTEIN, LLC
209 S. LaSalle Street, 7th Floor
Chicago, IL 60604
(312) 762-9450
acatalano@tdrlaw.com
mryan@tdrlaw.com

*Counsel for Defendants-Appellees Spill the Tea, Inc.,
Paola Sanchez, and Blake Milbrand*

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-2231

Short Caption: Nikko D'Ambrosio v. Meta Platforms, Inc., et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Paola Sanchez, Blake Milbrand, Spill The Tea, Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Tabet DiVito & Rothstein, LLC

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        None

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        None

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Amanda N. Catalano      Date: 8/12/2025

Attorney's Printed Name: Amanda N. Catalano

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).      Yes [✓]   No [ ]

Address: 209 S. LaSalle St., Suite 700

    Chicago, IL 60604

Phone Number: 312-762-9496      Fax Number: 312-762-9451

E-Mail Address: acatalano@tdrlaw.com

rev. 12/19 AK

i

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-2231

Short Caption: Nikko D'Ambrosio v. Meta Platforms, Inc., et al

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
 Paola Sanchez, Blake Milbrand, Spill The Tea, Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
 Tabet DiVito & Rothstein, LLC

(3)    If the party, amicus or intervenor is a corporation:

   i)        Identify all its parent corporations, if any; and

           None

   ii)        list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

           None

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

 N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

 N/A

Attorney's Signature: /s/ Megan E. Ryan          Date: 8/12/2025

Attorney's Printed Name:  Megan E. Ryan

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☐  **No** ☑

Address:  209 S. LaSalle St., Suite 700

           Chicago, IL 60604

Phone Number:  312-762-9459          Fax Number:  312-762-9451

E-Mail Address: mryan@tdrlaw.com

rev. 12/19 AK

# TABLE OF CONTENTS

APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENTS ........ i

TABLE OF AUTHORITIES ................................................................... v

JURISDICTIONAL STATEMENT ...................................................... 1

STATEMENT OF THE ISSUES........................................................... 1

STATEMENT OF THE CASE............................................................... 1

SUMMARY OF THE ARGUMENT ..................................................... 2

STANDARD OF REVIEW ................................................................... 2

ARGUMENT ....................................................................................... 2

I.     D'Ambrosio's claims fail as a matter of law ........................... 2

       A.     The IRPA claim fails as a matter of law...................... 2

              1.     D'Ambrosio fails to allege a "commercial purpose" ............ 3

              2.     Rajala's post falls within IRPA's exception for
                     portraying an individual in an article or visual work ....... 7

       B.     The Anti-Doxing Act claim fails as a matter of law..................... 7

              1.     D'Ambrosio fails to allege that any defendant
                     published his "personally identifiable information"........... 8

              2.     D'Ambrosio does not allege the requisite
                     intent or harm............................................................... 12

       C.     The defamation, false light invasion of privacy,
              civil conspiracy, and unjust enrichment claims fail as
              a matter of law........................................................... 15

II.    Section 230 of the Communications Decency Act bars
       D'Ambrosio's claims against the Spill the Tea Defendants .................. 15

       A.     The Spill the Tea Defendants use and provide an
              "interactive computer service" ...................................... 16

B.      The posts were "provided by another information content provider" ...............................................................16

C.      D'Ambrosio impermissibly treats the Spill the Tea Defendants as a "publisher" ...............................................17

III.     The First Amendment bars D'Ambrosio's claims against the Spill the Tea Defendants...................................................19

IV.    Dismissal with prejudice was appropriate............................................20

CONCLUSION.........................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ..................................................................... 14

*Bitner v. City of Pekin,*
  -- N.E.3d --, 2025 IL 131039 (Ill. 2025) ................................... 11

*Brooks v. Ross,*
  578 F.3d 574 (7th Cir. 2009) ..................................................... 14

*Fair Hous. Council of San Fernando Valley v. Roommates.com LLC,*
  521 F.3d 1157 (9th Cir. 2008) ................................................... 18

*Fed. Trade Comm'n v. Accusearch Inc.,*
  570 F.3d 1187 (10th Cir. 2009) ................................................. 18

*Fed. Trade Comm'n v. LeadClick Media,*
  LLC, 838 F.3d 158 (2d Cir. 2016) ............................................. 16

*G.G. v. Salesforce.com, Inc.,*
  76 F.4th 544 (7th Cir. 2023) ...................................................... 16

*Glob. Royalties, Ltd. v. Xcentric Ventures, LLC,*
  544 F. Supp. 2d 929 (D. Ariz. 2008) ........................................ 18

*Gonzalez-Koeneke v. West,*
  791 F.3d 801 (7th Cir. 2015) ..................................................... 20

*Henderson v. Source for Pub. Data, L.P.,*
  53 F.4th 110 (4th Cir. 2022) ...................................................... 17

*Huon v. Denton,*
  841 F.3d 733 (7th Cir. 2016) ........................................ 16, 17, 18, 19

*Huston v. Hearst Commc'ns, Inc.,*
  53 F.4th 1097 (7th Cir. 2022) ................................................. 3, 4

*Jones v. Dirty World Ent. Recordings LLC,*
  755 F.3d 398 (6th Cir. 2014) .................................................. 18, 19

*Jordan v. Jewel Food Stores, Inc.,*
  743 F.3d 509 (7th Cir. 2014) ................................................... 6, 7

*Mich. Ave. Nat'l Bank v. County of Cook,*
  732 N.E.2d 528 (Ill. 2000) ............................................................... 9

*Moody v. NetChoice, LLC,*
  603 U.S. 707 (2024) ................................................................. 19, 20

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,*
  591 F.3d 250 (9th Cir. 2009) ................................................... 15, 19

*Pooh-Bah Enters., Inc. v. Cook County,*
  905 N.E.2d 781 (Ill. 2009) ............................................................. 11

*Puffer v. Allstate Ins. Co.,*
  675 F.3d 709 (7th Cir. 2012) ....................................................... 5, 7

*Thompson v. Ill. Dep't of Prof. Reg.,*
  300 F.3d 750 (7th Cir. 2002) ........................................................... 4

*Zeran v. Am. Online, Inc.,*
  129 F.3d 327 (4th Cir. 1997) ......................................................... 20

**Statutes**

740 ILCS 195/5 ................................................................ 8, 9, 10, 11, 14

740 ILCS 195/10 ................................................................... 8, 9, 12, 13

765 ILCS 1075/1 ............................................................................... 2

765 ILCS 1075/5 ......................................................................... 3, 4, 5

47 U.S.C. § 230 ............................................................................. 15

Communications Decency Act .................................................*passim*

Illinois Civil Liability for Doxing Act ....................................*passim*

Illinois Right to Publicity Act .................................................*passim*

**Other Authorities**

First Amendment ............................................................... 1, 2, 19, 20

July 22, 2025 Order (ECF No. 2) ..................................................... 1

## JURISDICTIONAL STATEMENT

Consistent with the Court's July 22, 2025 Order (ECF No. 2), defendants-appellees Paola Sanchez, Blake Milbrand, and Spill the Tea, Inc. (the "Spill the Tea Defendants") adopt the Jurisdictional Statement of defendant-appellee Meta Platforms, Inc. ("Meta").[1]

## STATEMENT OF THE ISSUES

1.      Whether the district court correctly dismissed plaintiff-appellant Nikko D'Ambrosio's claims against the Spill the Tea Defendants for misappropriation under the Illinois Right to Publicity Act, unjust enrichment, defamation *per se* and *per quod*, invasion of privacy by false light and civil conspiracy, and violations of the Illinois Civil Liability for Doxing Act on the ground that each claim fails as a matter of law.

2.      Whether Section 230 of the Communications Decency Act and/or the First Amendment independently bar D'Ambrosio's claims against the Spill the Tea Defendants.

## STATEMENT OF THE CASE

The Spill the Tea Defendants adopt Meta's Statement of the Case.

---

[1] "ECF" refers to documents filed in this appeal. "Dkt." refers to documents filed in the district court. "D'Ambrosio Br." refers to D'Ambrosio's opening brief (ECF No. 19), and "A" refers to the Appendix attached to D'Ambrosio's opening brief.

## SUMMARY OF THE ARGUMENT

The district court correctly held that each of D'Ambrosio's claims against the Spill the Tea Defendants fails as a matter of state law. The district court identified multiple fatal defects with each claim, and D'Ambrosio cannot overcome them.

Federal law independently bars D'Ambrosio's claims against the Spill the Tea Defendants. D'Ambrosio does not allege that the Spill the Tea Defendants themselves posted any unlawful content about him. He seeks to impose liability on the Spill the Tea Defendants for hosting an online forum for third-party content and exercising traditional editorial functions in the administration of that forum. Both Section 230 of the Communications Decency Act, 47 U.S.C. § 230, and the First Amendment shield the Spill the Tea Defendants from liability.

## STANDARD OF REVIEW

The Spill the Tea Defendants adopt Meta's Standard of Review.

## ARGUMENT

I.     **D'Ambrosio's claims fail as a matter of law.**

A.     **The IRPA claim fails as a matter of law.**

D'Ambrosio alleges that defendant-appellee Abbigal Rajala's post in the "Are We Dating the Same Guy" Facebook group about her negative dating experience with D'Ambrosio and his subsequent vulgar text message to her violates the Illinois Right to Publicity Act, 765 ILCS 1075/1, *et seq.* ("IRPA"). D'Ambrosio's IRPA claim against the Spill the Tea Defendants fails for at least two reasons. First, D'Ambrosio does not allege that the Spill the Tea Defendants used his identity for a

2

commercial purpose. Second, Rajala's post falls within IRPA's exception for portraying an individual in an article or visual work.[2]

### 1.    D'Ambrosio fails to allege a "commercial purpose."

To state a claim for a violation of IRPA, a plaintiff must allege that the defendant used the plaintiff's identity, without the plaintiff's consent, for a "commercial purpose." *Huston v. Hearst Commc'ns, Inc.*, 53 F.4th 1097, 1099 (7th Cir. 2022). IRPA narrowly defines a "commercial purpose" to mean "the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising." 765 ILCS 1075/5. Failure to allege a commercial purpose is fatal to an IRPA claim. *Huston*, 53 F.4th at 1099.

D'Ambrosio argues that he has met IRPA's commercial purpose requirement because, by virtue of Rajala's post, the Spill the Tea Defendants allegedly "exploited his image" in "direct support of commercial fundraising campaigns." D'Ambrosio Br., p. 5. D'Ambrosio points to online fundraisers the Spill the Tea Defendants created "[o]n or about April 2023" on the websites GoFundMe and Patreon, both of which allegedly sought to raise funds to develop an "Are We Dating the Same Guy?"

---

[2] D'Ambrosio's text message to Rajala states: "Speak for yourself you ugly vial fake whore. Your ego matches that fake fucking face where you can't even smile in pictures because your teeth are so fucked. The truth hurts bitch and my message will stay with you forever cunt." Dkt. 71-2. D'Ambrosio admits he sent Rajala the text message. *See* A65, n.4.

app. A5, ¶ 16; A9, ¶ 31. D'Ambrosio attached the GoFundMe and Patreon fundraising pages as exhibits to his complaint. A38-43; A52-53.

The exhibits defeat D'Ambrosio's IRPA claim. As the exhibits make clear, D'Ambrosio's identity does not appear on the fundraising pages, let alone offer "direct support" for any of the Spill the Tea Defendants' fundraising efforts. *See id.* The exhibits supersede D'Ambrosio's argument to the contrary. *See Thompson v. Ill. Dep't of Prof. Reg.*, 300 F.3d 750, 754 (7th Cir. 2002) ("where a plaintiff attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim"). The Spill the Tea Defendants did not "public[ly] use or hold[ ] out" D'Ambrosio's identity "for the purpose of fundraising," so D'Ambrosio cannot state a claim. *See* 765 ILCS 1075/5.

Even if Rajala's post could be imputed to the Spill the Tea Defendants, D'Ambrosio's argument still fails because he "ignores the timing requirement implicit in IRPA's construction." *Huston*, 53 F.4th at 1101. To satisfy the statute's commercial purpose requirement, a plaintiff must show that the defendant used his identity "with the aim of effectuating" the alleged commercial activity. *Id.* Logically, then, the use of the plaintiff's identity must either "accompany" or "precede" the alleged commercial activity, not post-date it. *See id.* Rajala did not publish her post on Facebook until November 2023—seven months after the Spill the Tea Defendants created their fundraisers. *See* A11, ¶ 46. As the district court correctly held, the fact that a third party posted D'Ambrosio's image on a different website, with no link or reference to the fundraising pages, seven months after the Spill the

4

Tea Defendants created their fundraisers does not establish that the Spill the Tea Defendants used D'Ambrosio's identity for a commercial purpose. *See* A70.

The Spill the Tea Defendants raised these arguments in the district court, but D'Ambrosio failed to respond to them beyond baselessly insisting that the "GoFundMe campaign prominently featur[ed] Plaintiff's likeness." *See* A112. On appeal, D'Ambrosio now concedes (as he must) that his identity "was not literally displayed on these fundraising pages." D'Ambrosio Br., p. 5. In an effort to avoid that fatal deficiency, D'Ambrosio argues, for the first time, that he met IRPA's commercial purpose requirement because the Spill the Tea Defendants used Rajala's Facebook post as "part of an overall marketing scheme." *Id.* This argument fails multiple times over.

As a threshold matter, D'Ambrosio did not make this argument in the district court, so he waived it. *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012) ("It is a well-established rule that arguments not raised to the district court are waived on appeal.").

Waiver aside, D'Ambrosio's argument rests on the incorrect premise that IRPA "requires only that the identity be used 'in connection with' the fundraising," and that his identity therefore does not need to appear "as the face of the donation page itself." D'Ambrosio Br., p. 5. D'Ambrosio's argument improperly conflates the statutory language. IRPA prohibits using an individual's identity either (1) "on or in connection with the offering for sale or sale of a product," or (2) "for the purpose of fundraising." 765 ILCS 1075/5. D'Ambrosio does not allege that the Spill the Tea

5

Defendants used his identity to sell or offer to sell a product, so IRPA's "in connection with" language is not applicable. D'Ambrosio was required to plausibly allege that the Spill the Tea Defendants used his identity "for the purpose of fundraising," and he has not met that bar.

Moreover, even if it was enough for D'Ambrosio to allege that the Spill the Tea Defendants used his identify "in connection with" their fundraisers, D'Ambrosio has not plausibly alleged that Rajala's Facebook post was in any way connected to the fundraisers. D'Ambrosio relies on *Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509 (7th Cir. 2014), but *Jordan* refutes his argument. There, global superstar Michael Jordan sued Jewel supermarkets for running an ad in a special edition of Sports Illustrated magazine devoted to Jordan's induction into the national basketball hall of fame. *Id.* at 511. Jewel's ad identified Jordan by name, described his illustrious career, and featured a photo of Chicago Bulls-hued basketball shoes bearing his famous number 23. *Id.* at 512-13. As the court noted, Jewel's ad was "creatively and conspicuously linked to Jordan." *Id.* at 512. In contrast, the Spill the Tea Defendants' fundraisers do not mention D'Ambrosio at all, and Rajala's Facebook post says nothing about the fundraisers. The fundraisers lack even a tenuous connection with D'Ambrosio, let alone the conspicuous link that was present in *Jordan*.

Finally, D'Ambrosio insists that Rajala's post was "engineered into a spectacle that drove traffic, galvanized support, and served as the emotional and narrative hook" for the Spill the Tea Defendants' fundraisers. D'Ambrosio Br., p. 5.

6

D'Ambrosio waived this argument by failing to raise it in the district court. *Puffer*, 675 F.3d at 718. In any event, the argument is meritless. D'Ambrosio does not point to a single allegation to support his rhetoric, and common sense does not work in his favor. D'Ambrosio is not Michael Jordan, a "famous athlete" whose identity has an "obvious" "commercial value." *Jordan*, 743 F.3d at 518. By his own admission, D'Ambrosio is just one of the "thousands" of individuals about whom users posted in the "Are We Dating the Same Guy?" Facebook group. It is far too great an inferential leap to conclude that a Facebook post that is one among thousands, and that is wholly untethered in time or place to the Spill the Tea Defendants' fundraisers, served as the fundraisers' "emotional and narrative hook." D'Ambrosio does not allege the requisite commercial purpose, and the district court properly dismissed his IRPA claim.

### 2. Rajala's post falls within IRPA's exception for portraying an individual in an article or visual work.

For all the reasons set forth in Section I.A(2) of Meta's brief, which the Spill the Tea Defendants adopt, D'Ambrosio's IRPA claim fails for the independent reason that it falls within IRPA's exception for portraying an individual in an article of visual work.

### B. The Anti-Doxing Act claim fails as a matter of law.

To state a claim under the Anti-Doxing Act, a plaintiff must allege: (1) the defendant published the plaintiff's "personally identifiable information," (2) the defendant published the information with the intent to harass and with knowledge or reckless disregard that the plaintiff would be "reasonably likely to suffer death,

bodily injury, or stalking," and (3) the plaintiff suffered significant harm as a result

of the publication. 740 ILCS 195/10(a)(1)-(2). The district court rightly held that

D'Ambrosio does not plausibly allege any of these elements.

> **1.    D'Ambrosio fails to allege that any defendant published his "personally identifiable information."**

As the district court correctly explained, "personally identifiable information"

under the Anti-Doxing Act "does not mean all information used to identify an

individual." A82. It is instead narrowly defined as:

> Any information that can be ***used to distinguish or trace a person's identity***, such as name, prior legal name, alias, mother's maiden name, and date or place of birth ***in combination with*** any other information that is linked or linkable to a person such as:
>
> (1)    social security number, home address, phone number, email address, social media accounts, or biometric data;
>
> (2)    medical, financial, education, consumer, or employment information, data, or records;
>
> (3)    ***any other sensitive or private information*** that is linked or linkable to a specific identifiable person, such as gender identity, sexual orientation, or any sexually intimate visual depiction; or
>
> (4)    any information that provides access to a person's teleconferencing, video-teleconferencing, or other digital meeting room.

740 ILCS 195/5 (emphasis added).

Read as a whole, the Anti-Doxing Act establishes a two-prong test for

determining whether a publication contains "personally identifiable information."

First, the publication must contain information that is sufficient to "distinguish or

trace" a person's identity, such as the person's name coupled with their date of birth. *See id.* Second, the publication must contain information that is uniquely "linked or linkable" to a specific person. *See id.* But not just any "linked or linkable" information will do. The statute, through both its plain language and the examples it provides (*e.g.*, social security number, home address, medical and financial records), makes clear that only information that is "sensitive or private" satisfies the second prong. *See id.*

This interpretation is consistent with the overall purpose of the Anti-Doxing Act. The primary objective in construing a statute "is to ascertain and give effect to the legislature's intent," of which the statutory language is "the most reliable indicator." *Mich. Ave. Nat'l Bank v. County of Cook*, 732 N.E.2d 528, 503-04 (Ill. 2000). The court must "view all provisions of an enactment as a whole," and statutory provisions "must be interpreted in light of other relevant provisions of the statute." *Id.* at 504. By its plain terms, the Anti-Doxing Act seeks to prevent individuals from being identified, harassed, and "reasonably likely to suffer death, bodily injury, or stalking" due to the disclosure of sensitive or private personal information. 740 ILCS 195/10(a)(1). The statute's language reflects the legislature's intent that the Anti-Doxing Act deter "would-be harassers and Internet trolls" from broadcasting a victim's "personal information" to "other would-be harassers and Internet trolls looking for a way to crowdsource hate or to target an individual." 103rd Ill. Gen. Assem., House Proceedings, March 22, 2023 (statements of Rep. Gong-Gershowitz). The statute therefore limits "personally identifiable information"

9

to information that allows others to locate a person and subject them to harassment. D'Ambrosio seems to agree. D'Ambrosio Br., p. 14 (personally identifiable information is "any unique identifier that permits the physical or online contacting of a specific individual").

With these principles in mind, the district court correctly held that D'Ambrosio does not and cannot allege that the defendants published his personally identifiable information. D'Ambrosio argues that the Facebook posts contain his personally identifiable information because they disclose his first name (not his full name) and some photos of him that were taken in public places and for which he posed. D'Ambrosio Br., p. 14; A45-51; A54-58. This sort of skeletal information does not satisfy the statute's first requirement that personally identifiable information be sufficient to "distinguish or trace" a person's identity. *See* 740 ILCS 195/5. Facebook users would be hard-pressed to discern D'Ambrosio's identity and target him for harassment armed with nothing more than his first name and a headshot.

D'Ambrosio also cannot establish the second prong, which requires that the publication contain "sensitive or private information." *See* 740 ILCS 195/5. D'Ambrosio argues that his photos meet this criterion, but the photos are neither "sensitive" nor "private." They appear to be screenshots of photos D'Ambrosio posted of himself online. *See* A45; A49; A55; A57. In each photo, D'Ambrosio is in a public setting and smiling for the camera. *See id.* As the district court correctly reasoned, it is evident from even a "cursory look" that these photos are not the type of information that falls within the statute's purview. A85.

10

The statutory language supports this conclusion. The statute lists specific types of "sensitive or private information" that fall within the definition of personally identifiable information, including a person's social security number, home address, phone number, medical or financial records, employment information, sexual orientation, and information that provides access to a person's online meeting rooms. 740 ILCS 195/5. Unsurprisingly, innocuous photos like D'Ambrosio's do not appear on the list. *See id.* The photos must therefore fall within the statute's catchall provision of "other sensitive or private information that is linked or linkable to a specific identifiable person" to qualify as personally identifiable information. *See id.* They plainly do not.

Under the "cardinal rule of statutory construction known as *ejusdem generis*," when a statute lists specific examples and then adds a general phrase like "other," the general phrase is interpreted to include only items that are similar to the specifically listed examples. *Pooh-Bah Enters., Inc. v. Cook County*, 905 N.E.2d 781, 799 (Ill. 2009). The examples in the statute—social security number, home address, medical and financial records, and the like—all contain sensitive information, private information, or both. *See* 740 ILCS 195/5. D'Ambrosio's photos are not sensitive or private. Additionally, under the doctrine of *expressio unius est exclusio alterius* ("the expression of one thing is the exclusion of any other"), the statute's listing of a "sexually intimate visual depiction" implies the exclusion of innocuous visual depictions like D'Ambrosio's photos. *See Bitner v. City of Pekin*, -- N.E.3d --, 2025 IL 131039, ¶ 30 (Ill. 2025).

11

In short, the district court was correct: "Personally identifiable information does not mean all information used to identify an individual," and D'Ambrosio's first name and photos do not fall within the statutory definition. A82. D'Ambrosio argues the district court's analysis is "both legally flawed and inconsistent with the statutory language and legislative intent," but he does not explain why, and he does not discuss the statute's language or intent at all. D'Ambrosio Br., p. 14. Instead, he insists, without citing any authority, that his photos must be "understood contextually." *Id.* That argument violates the statute's plain language, which states that a person's identity must be discernible "from the published personally identifiable information itself." 740 ILCS 195/10.

Finally, D'Ambrosio argues that even if the Facebook posts contain only inactionable "partial identifiers," supplemental identifiers like "screen names" and "location tags" can elevate partial identifiers into "actionable disclosures." D'Ambrosio Br., p. 14. He also argues that some of the posts about him included "calls for additional data," like his employment and criminal background. *Id.* But D'Ambrosio does not allege that anyone posted this supplemental or additional information, so his argument is irrelevant.[3]

### 2.    D'Ambrosio does not allege the requisite intent or harm.

Setting aside that no defendant published his personally identifiable information, the Anti-Doxing Act claim fails for the independent reason that D'Ambrosio cannot allege the requisite intent or harm. To prevail on his claim

---

[3] D'Ambrosio was recently convicted on two counts of tax fraud and sentenced to a year and a day in federal prison. A75, n.8.

under the Anti-Doxing Act, D'Ambrosio must establish not only that the Spill the Tea Defendants published his personally identifiable information, but also:

> (1) the information is published with the intent that it be used to harm or harass the person whose information is published and with knowledge or reckless disregard that the person whose information is published would be reasonably likely to suffer death, bodily injury, or stalking; and
>
> (2) the publishing of the information:
>
>> (i) causes the person whose information is published to suffer significant economic injury or emotional distress or to fear serious bodily injury or death of the person or a family member or household member of the person; or
>>
>> (ii) causes the person whose information is published to suffer a substantial life disruption.

740 ILCS 195/10(a).

As the district court rightly observed, "D'Ambrosio does nothing more than restate these elements in his Second Amended Complaint," which is insufficient to withstand a motion to dismiss. A86; *see* A20, ¶ 105. D'Ambrosio does not allege any facts establishing that any of the defendants intended to harass him, or that they knew or recklessly disregarded that he was likely to suffer "death, bodily injury, or stalking" because of the Facebook posts. Nor do the posts themselves allow such an inference. As D'Ambrosio alleges, the purpose of the "Are We Dating the Same Guy?" forum was to allow women to "keep each other safe from toxic men," not to seek them out. A5, ¶ 13. The posts at issue reflect that intent: they warn users to "steer clear" of D'Ambrosio. A47. Consistent with that warning, D'Ambrosio does not allege that anyone contacted him as a result of the posts, let alone harassed him or threatened him with grave bodily harm.

13

Similarly, D'Ambrosio does not plead facts to show that the posts caused him to suffer harm of any kind, never mind the "significant" and "substantial" harm the Anti-Doxing Act requires. *See* 740 ILCS 195/5 (defining emotional distress as "significant mental suffering, anxiety, or alarm . . . that is protracted and not merely trivial or transitory"); *id.* (defining "substantial life disruption" as, for example, "moving from an established residence, changing routes to and from work," or "changing employment or work schedule"). D'Ambrosio simply regurgitates the statutory language. A21, ¶ 106. It is well-settled that "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (plaintiffs may not "merely parrot the statutory language of the claims they are pleading (something that anyone could do, regardless of what may be prompting the lawsuit), rather than providing some specific facts to ground those legal claims"). D'Ambrosio was required to plead facts, and as the district court correctly held, he did not. A86.

D'Ambrosio quarrels with the district court's holding, but he does not point to any allegations in his complaint that would sustain his claim. *See* D'Ambrosio Br., pp. 15-16. He references some "suggestions" in the comments section of the posts to "research" his employment and prior relationships, but he does not allege that anyone ever acted on those suggestions, or that he suffered harm as a result. *See id.* With no facts on which to rely, D'Ambrosio resorts to vague rhetoric about "cyber vigilantism" and "the broader ethos of the group," and he speculates about

14

legislative intent without citing any authorities. *Id.* But lawsuits do not rest on rhetoric. They require facts, and D'Ambrosio alleges none. The district court properly dismissed D'Ambrosio's Anti-Doxing Act claim.

### C. The defamation, false light invasion of privacy, civil conspiracy, and unjust enrichment claims fail as a matter of law.

D'Ambrosio's remaining claims against the Spill the Tea Defendants—defamation *per se* and *per quod*, false light invasion of privacy, civil conspiracy, and unjust enrichment—fail for the reasons set forth in Sections I.B, I.C, and I.G of Meta's brief, which the Spill the Tea Defendants adopt.

### II. Section 230 of the Communications Decency Act bars D'Ambrosio's claims against the Spill the Tea Defendants.

The district court correctly dismissed D'Ambrosio's claims because they failed as a matter of state law. While the Court need go no further, Section 230 of the Communications Decency Act, 47 U.S.C. § 230, is an independent basis for dismissal. In passing the Communications Decency Act, Congress recognized the need "to preserve the vibrant and competitive free market" and "forum for a true diversity" of ideas that the internet promotes. 47 U.S.C. § 230(a), (b). To further that policy, Section 230 states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Section 230 thus bars "state-law plaintiffs from holding interactive computer service providers legally responsible for information created and developed by third parties." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (9th Cir. 2009).

Section II of Meta's brief explains the general parameters for dismissal under Section 230. As set forth there, Section 230 precludes liability where (1) the defendant uses or provides an "interactive computer service" and (2) "is being 'treated as the publisher or speaker'" of (3) "information provided by another information content provider." *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 566 (7th Cir. 2023) (quoting 47 U.S.C. § 230(c)(1)). Each element is satisfied as to the Spill the Tea Defendants.

## A.    The Spill the Tea Defendants use and provide an "interactive computer service."

The Spill the Tea Defendants use an interactive computer service because they administer the "Are We Dating the Same Guy?" group through Facebook, which, as set forth in Section II.A of Meta's brief, is an interactive computer service. The Spill the Tea Defendants also provide an interactive computer service because "Are We Dating the Same Guy?" is an online forum for third-party users to submit comments, which courts have repeatedly held is an interactive computer service. *Huon v. Denton*, 841 F.3d 733, 741 (7th Cir. 2016) (the host of "an online forum for third-party users to submit comments" is a provider of an interactive computer service); *Fed. Trade Comm'n v. LeadClick Media*, LLC, 838 F.3d 158, 174 (2d Cir. 2016) ("Courts typically have held that . . . online message boards . . . fall within this definition.").

## B.    The posts were "provided by another information content provider."

As Meta explains in Section II.B of its brief, which the Spill the Tea Defendants adopt, this element is not plausibly in dispute. D'Ambrosio does not

16

allege that any of the Spill the Tea Defendants authored any of the posts or comments with which he takes issue. Rajala and a Jane Doe authored the posts and comments, and they are third-party information content providers.

### C.    D'Ambrosio impermissibly treats the Spill the Tea Defendants as a "publisher."

D'Ambrosio treats the Spill the Tea Defendants as a "publisher" of third-party content. Across his various claims, D'Ambrosio seeks to hold the Spill the Tea Defendants liable for "intentionally republish[ing]," "retransmit[ting]," broadcast[ing]," and "publish[ing]" Rajala's posts and the ensuing comments. A16-17 (Count One); A19 (Count Three); A20-21 (Count Four); A21-22 (Count Five); A35 (Count Nine). As Meta explains in Section II.C of its brief, Section 230 protects publishers from liability for their publication choices, regardless of the cause of action a plaintiff invokes, and it bars D'Ambrosio's claims. To the extent D'Ambrosio attempts to argue that his IRPA claim falls within Section 230's carveout for intellectual property claims, that argument fails for the reasons set forth in Section II.C of Meta's brief, which the Spill the Tea Defendants adopt.

D'Ambrosio attempts to plead around Section 230 by alleging the Spill the Tea Defendants are information content providers themselves. A18, ¶ 90. But forum administrators like the Spill the Tea Defendants are not information content providers simply because they host an online forum for third-party users to submit comments. *Huon*, 841 F.3d at 741. D'Ambrosio must plausibly allege that the Spill the Tea Defendants "directly and 'materially' contributed to what made the content itself 'unlawful.'" *Henderson v. Source for Pub. Data, L.P.*, 53 F.4th 110, 127 (4th

Cir. 2022) (quoting *Force v. Facebook, Inc.*, 934 F.3d 53, 68 (2d Cir. 2019)); *see also Fair Hous. Council of San Fernando Valley v. Roommates.com LLC*, 521 F.3d 1157, 1168 (9th Cir. 2008) (same); *Jones v. Dirty World Ent. Recordings LLC*, 755 F.3d 398, 413 (6th Cir. 2014) (same). He does not meet this standard.

Courts have held that forum administrators directly and materially contribute to unlawful content when, for example, they draft unlawful content themselves, require users to post unlawful content as a condition for using the forum, or compensate users for posting unlawful content. *See, e.g., Huon*, 841 F.3d at 742 (defendant authored unlawful content); *Roommates.com*, 521 F.3d at 1166 (users were required to violate federal and state housing laws as a condition of accessing defendant's website); *Fed. Trade Comm'n v. Accusearch Inc.*, 570 F.3d 1187, 1199 (10th Cir. 2009) (defendant compensated users for unlawful content). Conversely, courts have held that forum administrators are not information content providers where they "[do] not require users to violate the law as a condition of posting, [do] not compensate for the posting of actionable speech, [do] not post actionable content themselves, and therefore [are] not responsible for the actionable speech that was displayed on their websites." *Jones*, 755 F.3d at 414. That is true even if the forum is a "passive conduit for disseminating defamatory statements." *See Huon*, 841 F.3d at 742; *Glob. Royalties, Ltd. v. Xcentric Ventures, LLC*, 544 F. Supp. 2d 929, 933 (D. Ariz. 2008) ("It is obvious that a website entitled Ripoff Report encourages the publication of defamatory content. However, there is no

18

authority for the proposition that this makes the website operator responsible, in whole or in part, for the 'creation or development' of every post on the site.").

D'Ambrosio does not allege that the Spill the Tea Defendants posted unlawful content themselves, required users to post unlawful content, or compensated users for posting unlawful content. He alleges only that the Spill the Tea Defendants manually "reviewed" and "approved" posts and provided "editorial advice" and "guidelines." A2,¶ 5; A6, ¶ 20; A13, ¶¶ 55-56; A18, ¶ 90. These allegations seek to impose liability on the Spill the Tea Defendants for exercising traditional editorial functions, which is barred as a matter of law. *Moody v. NetChoice, LLC*, 603 U.S. 707, 731 (2024); *see also Jones*, 755 F.3d at 403 (website operator who encouraged users to submit salacious posts and hand-selected posts for publication was not an information content provider). Even if D'Ambrosio's theory was not categorically barred, his threadbare allegations are too conclusory to allege the Spill the Tea Defendants are information content providers. *See Huon*, 841 F.3d at 742 (complaint "asserting one or two standalone factual allegations concerning [a defendant's] control over comments" does not suffice); *Nemet Chevrolet, Ltd.*, 591 F.3d at 258 (alleging a defendant "revis[ed] and redraft[ed]" content, without identifying what the defendant wrote, was insufficient).

## III.    The First Amendment bars D'Ambrosio's claims against the Spill the Tea Defendants.

As set forth above in Section II.C, D'Ambrosio's claims against the Spill the Tea Defendants are premised on allegations that they "reviewed" and "approved" posts and provided users "editorial advice." D'Ambrosio thus improperly seeks to

impose liability on the Spill the Tea Defendants for exercising their First Amendment rights to engage in protected "editorial discretion in the selection and presentation" of content. *Moody* 603 U.S. at 731 (citation omitted); *see also Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997) ("[l]awsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content—are barred"). As the Supreme Court recently explained, "[d]eciding on the third-party speech that will be included in or excluded from a compilation—and then organizing and presenting the included items—is expressive activity of its own." *Moody*, 603 U.S. at 731. That is "as true when the content comes from third parties as when it does not." *Id.* The First Amendment bars D'Ambrosio's claims.

To the extent D'Ambrosio attempts to argue that the First Amendment does not protect defamatory or otherwise unlawful content or that the Spill the Tea Defendants engaged in commercial speech, those arguments are meritless. As set forth in Section I above, D'Ambrosio does not plausibly allege that any defendant published unlawful content, and he does not plausibly allege that the Spill the Tea Defendants' alleged conduct qualifies as commercial speech.

## IV.    Dismissal with prejudice was appropriate.

Dismissal with prejudice was appropriate for the reasons set forth in Section IV of Meta's brief, which the Spill the Tea Defendants adopt. In addition to those reasons, D'Ambrosio does not attempt to demonstrate how any proposed amendment would cure the multiple legal deficiencies in his claims against the Spill the Tea Defendants. *See Gonzalez-Koeneke v. West*, 791 F.3d 801, 808 (7th Cir.

2015) ("A district court acts within its discretion in denying leave to amend . . .

when the plaintiff fails to demonstrate how the proposed amendment would cure

the deficiencies in the prior complaint.").

## CONCLUSION

This Court should affirm the district court's judgment dismissing

D'Ambrosio's claims against the Spill the Tea Defendants with prejudice.

Dated: October 14, 2025                    Respectfully submitted,

Amanda N. Catalano                         SPILL THE TEA, INC.,
Megan E. Ryan                              PAOLA SANCHEZ, and
TABET DIVITO & ROTHSTEIN, LLC              BLAKE MILLBRAND
209 S. LaSalle Street, 7th Floor
Chicago, IL 60604                          By: */s/ Amanda N. Catalano*
(312) 762-9450                             Amanda N. Catalano
acatalano@tdrlaw.com
mryan@tdrlaw.com

*Counsel for Defendants-Appellees Spill the*
*Tea, Inc., Paola Sanchez, and Blake*
*Milbrand*

21

## CERTIFICATION

I hereby certify that this brief complies with the type-volume limitations of Circuit Rule 32(c) because it contains 5,273 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f). I further certify that this brief complies with the typeface requirements of Circuit Rule 32(b) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using a proportionally spaced 12-point font (Century Schoolbook).

/s/ Amanda N. Catalano
Amanda N. Catalano

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2025, I filed **Defendants-Appellees Spill the Tea, Inc., Paola Sanchez, and Blake Milbrand's Response Brief** with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Amanda N. Catalano*
Amanda N. Catalano