No. 25-2231

# United States Court of Appeals
# for the Seventh Circuit

NIKKO D'AMBROSIO,

*Plaintiff-Appellant,*

V.

ABBIGAIL RAJALA, CAROL RAJALA, RODNEY RAJALA, PAOLA SANCHEZ, BLAKE
MILLBRAND, META PLATFORMS, INC., AND SPILL THE TEA, INC.,

*Defendants-Appellees.*

On Appeal from the United States District Court for the
Northern District of Illinois, Case No. 1:24-cv-678
The Honorable Sunil R. Harjani

**BRIEF AND SUPPLEMENTAL APPENDIX FOR
DEFENDANT-APPELLEE META PLATFORMS, INC.**

Melanie M. Blunschi
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600

Gary Feinerman
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
(312) 876-7700

Kristin C. Holladay
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

October 14, 2025

*Counsel for Defendant-Appellee Meta Platforms, Inc.*

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: <u>25-2231</u>

Short Caption: <u>Nikko D'Ambrosio v. Meta Platforms, Inc., et al.</u>

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

<u>Meta Platforms, Inc.</u>

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

<u>Latham & Watkins LLP</u>

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

<u>N/A</u>

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

<u>N/A per Meta Platforms, Inc.'s April 17, 2025 proxy statement</u>

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

<u>N/A</u>

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

<u>N/A</u>

Attorney's Signature: <u>/s/ Gary Feinerman</u>    Date: <u>10/14/2025</u>

Attorney's Printed Name: <u>Gary Feinerman</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☒    **No** ☐

Address: <u>Latham & Watkins LLP</u>

<u>330 North Wabash Avenue, Suite 2800, Chicago, IL 60611</u>

Phone Number: <u>(312) 876-7700</u>    Fax Number: <u>(312) 993-9767</u>

E-Mail Address: <u>gary.feinerman@lw.com</u>

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: <u>25-2231</u>

Short Caption: <u>Nikko D'Ambrosio v. Meta Platforms, Inc., et al.</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first.  Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    <u>Meta Platforms, Inc.</u>

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    <u>Latham & Watkins LLP</u>

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        <u>N/A</u>

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        <u>N/A per Meta Platforms, Inc.'s April 17, 2025 proxy statement</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    <u>N/A</u>

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    <u>N/A</u>

Attorney's Signature: <u>/s/ Melanie M. Blunschi</u>    Date: <u>10/14/2025</u>

Attorney's Printed Name: <u>Melanie M. Blunschi</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes**    **No** ☒

Address: <u>Latham & Watkins LLP</u>

    <u>505 Montgomery Street, Suite 2000, San Francisco, CA 94111</u>

Phone Number: <u>(415) 391-0600</u>    Fax Number: <u>(415) 395-8095</u>

E-Mail Address: <u>melanie.blunschi@lw.com</u>

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: <u>25-2231</u>

Short Caption: <u>Nikko D'Ambrosio v. Meta Platforms, Inc., et al.</u>

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

<u>Meta Platforms, Inc.</u>

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

<u>Latham & Watkins LLP</u>

(3)  If the party, amicus or intervenor is a corporation:

    i)  Identify all its parent corporations, if any; and

    <u>N/A</u>

    ii)  list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

    <u>N/A per Meta Platforms, Inc.'s April 17, 2025 proxy statement</u>

(4)  Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

<u>N/A</u>

(5)  Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

<u>N/A</u>

---

Attorney's Signature: <u>/s/ Kristin C. Holladay</u>    Date: <u>10/14/2025</u>

Attorney's Printed Name: <u>Kristin C. Holladay</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes**    **No ☒**

Address: <u>Latham & Watkins LLP</u>

    <u>1271 Avenue of the Americas, New York, NY 10020</u>

Phone Number: <u>(212) 906-1200</u>    Fax Number: <u>(212) 751-4864</u>

E-Mail Address: <u>kristin.holladay@lw.com</u>

# TABLE OF CONTENTS

**Page**

APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENTS ................... i

TABLE OF AUTHORITIES ............................................................... vi

JURISDICTIONAL STATEMENT ......................................................... 1

ISSUES PRESENTED ...................................................................... 3

INTRODUCTION ........................................................................... 3

STATEMENT OF THE CASE ............................................................. 4

    A.    Factual Background ............................................................. 4

    B.    Procedural History .............................................................. 5

SUMMARY OF ARGUMENT ............................................................. 7

STANDARD OF REVIEW ................................................................. 8

ARGUMENT ................................................................................ 8

I.      D'AMBROSIO'S CLAIMS FAIL UNDER STATE LAW ...................... 8

    A.    IRPA ................................................................................ 8

        1.    Failure to Plead Commercial Purpose ......................... 9

        2.    Exemption for Portraying an Individual in an Article or Visual Work ................................................. 12

    B.    Defamation ..................................................................... 12

        1.    Defamation *per se* ................................................... 13

        2.    Defamation *per quod* ............................................. 14

    C.    False Light Invasion of Privacy, Civil Conspiracy ................. 15

    D.    Strict Product Liability .................................................... 16

    E.    Negligence ...................................................................... 19

    F.    Negligent Entrustment ...................................................... 21

**Page**

    G.    Unjust Enrichment..................................................................... 22

II.    SECTION 230 BARS D'AMBROSIO'S CLAIMS AGAINST META .............. 23

    A.    Meta Provides "An Interactive Computer Service"............................. 24

    B.    The Posts Were Made By "[O]ther Information Content Provider[s]" ............................................................................ 24

    C.    D'Ambrosio Impermissibly Treats Meta As A "Publisher".................. 25

III.    THE FIRST AMENDMENT BARS D'AMBROSIO'S CLAIMS AGAINST META ................................................................................ 30

IV.    DISMISSAL WITH PREJUDICE WAS APPROPRIATE................................ 32

CONCLUSION ................................................................................ 33

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ad World, Inc. v. Township of Doylestown*,
   672 F.2d 1136 (3d Cir. 1982) ................................................................. 10

*American National Bank & Trust Co. of Chicago v. National
   Advertising Co.*,
   594 N.E.2d 313 (Ill. 1992) ...................................................................... 19

*Anderson v. TikTok, Inc.*,
   116 F.4th 180 (3d Cir. 2024) ............................................................ 18, 29

*Bank of America, N.A. v. Knight*,
   725 F.3d 815 (7th Cir. 2013) ................................................................... 32

*Barnes v. Yahoo!, Inc.*,
   570 F.3d 1096 (9th Cir. 2009) ........................................................... 25, 26

*Estate of Bride ex rel. Bride v. Yolo Technologies, Inc.*,
   112 F.4th 1168 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1435 (2025).................. 26

*Bryson v. News America Publications, Inc.*,
   672 N.E.2d 1207 (Ill. 1996) .................................................................... 14

*Chicago Lawyers' Committee for Civil Rights Under Law, Inc. v.
   Craigslist, Inc.*,
   519 F.3d 666 (7th Cir. 2008) ............................................................. 21, 29

*Collier v. Murphy*,
   2003 WL 1606637 (N.D. Ill. Mar. 26, 2003) ......................................... 12

*Crosby v. Twitter, Inc.*,
   921 F.3d 617 (6th Cir. 2019) ................................................................... 21

*Cross v. Facebook, Inc.*,
   222 Cal. Rptr. 3d 250 (Ct. App. 2017)................................................... 10

*Doe 1 v. Twitter, Inc.*,
   148 F.4th 635 (9th Cir. 2025)................................................................. 28

*Doe (K.B.) v. Backpage.com, LLC*,
   768 F. Supp. 3d 1057 (N.D. Cal. 2025) ................................................. 29

**Page(s)**

*Doe v. Grindr Inc.*,
128 F.4th 1148 (9th Cir. 2025), *cert. denied*, No. 24-1202 (Oct. 14, 2025)..................................................................................... 26

*Doe v. GTE Corp.*,
347 F.3d 655 (7th Cir. 2003) ................................................... 20, 22, 23

*Dotson v. Faulkner*,
138 F.4th 1029 (7th Cir. 2025)...................................................*passim*

*Douglass v. Hustler Magazine, Inc.*,
769 F.2d 1128 (7th Cir. 1985) ............................................................. 30

*Dyroff v. Ultimate Software Group, Inc.*,
934 F.3d 1093 (9th Cir. 2019) ............................................... 20, 27, 28

*Force v. Facebook, Inc.*,
934 F.3d 53 (2d Cir. 2019).......................................... 23, 24, 26, 27, 28

*G.G. v. Salesforce.com, Inc.*,
76 F.4th 544 (7th Cir. 2023)............................................................ 23, 26

*Garland v. Sybaris Clubs International, Inc.*,
141 N.E.3d 730 (Ill. App. 2019)......................................................... 22

*Ginsberg v. Google Inc.*,
586 F. Supp. 3d 998 (N.D. Cal. 2022) ............................................... 20

*Gonzalez v. Google LLC*,
598 U.S. 617 (2023) ........................................................................... 28

*Gracia v. SigmaTron International, Inc.*,
986 F.3d 1058 (7th Cir. 2021) ........................................................... 15

*Hall v. Berryhill*,
906 F.3d 640 (7th Cir. 2018) ............................................................. 31

*Herrick v. Grindr LLC*,
765 F. App'x 586 (2d Cir. 2019)........................................................ 26

*Home Valu, Inc. v. Pep Boys*,
213 F.3d 960 (7th Cir. 2000) ........................................................ 11, 12

*Huon v. Denton*,
841 F.3d 733 (7th Cir. 2016) ............................................................. 26

**Page(s)**

*Huston v. Hearst Communications, Inc.,*
   53 F.4th 1097 (7th Cir. 2022) ............................................................... 9, 10

*Jackson v. Airbnb, Inc.,*
   639 F. Supp. 3d 994 (C.D. Cal. 2022) ............................................... 17, 18

*James v. Meow Media, Inc.,*
   300 F.3d 683 (6th Cir. 2002) ...................................................................... 18

*Jauquet v. Green Bay Area Catholic Education, Inc.,*
   996 F.3d 802 (7th Cir. 2021) ......................................................................... 8

*Johnson v. Arden,*
   614 F.3d 785 (8th Cir. 2010) ...................................................................... 25

*Jordan v. Jewel Food Stores, Inc.,*
   743 F.3d 509 (7th Cir. 2014) ...................................................................... 31

*Klayman v. Zuckerberg,*
   753 F.3d 1354 (D.C. Cir. 2014) ...................................................... 19, 23, 24

*Lama v. Meta Platforms, Inc.,*
   732 F. Supp. 3d 214 (N.D.N.Y. 2024) ...................................................... 26

*Law Offices of David Freydin, P.C. v. Chamara,*
   24 F.4th 1122 (7th Cir. 2022) ............................................................. 13, 16

*Lemmon v. Snap, Inc.,*
   995 F.3d 1085 (9th Cir. 2021) .................................................................... 18

*Lott v. Levitt,*
   556 F.3d 564 (7th Cir. 2009) ........................................................ 13, 14, 15

*Love v. Simmons,*
   2024 WL 809107 (N.D. Ill. Feb. 27, 2024) .............................................. 12

*Lukis v. Whitepages Inc.,*
   542 F. Supp. 3d 831 (N.D. Ill. 2020) ....................................................... 10

*M.P. ex rel. Pinckney v. Meta Platforms Inc.,*
   127 F.4th 516 (4th Cir.), *cert denied*, No. 24-1133, 2025 WL 2824590
   (Oct. 6, 2025) ........................................................................................ 21, 28

*Marshall's Locksmith Service Inc. v. Google, LLC,*
   925 F.3d 1263 (D.C. Cir. 2019) ................................................................. 23

**Page(s)**

*Milford v. Commercial Carriers, Inc.,*
210 F. Supp. 2d 987 (N.D. Ill. 2002) ..................................................... 17

*Moody v. NetChoice, LLC,*
603 U.S. 707 (2024) .......................................................... 27, 30, 31

*Muzikowski v. Paramount Pictures Corp.,*
322 F.3d 918 (7th Cir. 2003) .......................................... 13, 15, 16

*Muzikowski v. Paramount Pictures Corp.,*
477 F.3d 899 (7th Cir. 2007) ................................................ 13

*Patterson v. Meta Platforms, Inc.,*
239 N.Y.S.3d 726 (App. Div. 2025) ..................................... 28

*Perfect 10, Inc. v. CCBill LLC,*
488 F.3d 1102 (9th Cir. 2007) .............................................. 30

*Pope v. Chronicle Publishing Co.,*
95 F.3d 607 (7th Cir. 1996) .................................................. 16

*Rahn v. Board of Trustees of Northern Illinois University,*
803 F.3d 285 (7th Cir. 2015) ..................................... 17, 19, 21

*Rao v. J.P. Morgan Chase Bank, N.A.,*
– F.4th –, 2025 WL 2462432 (7th Cir. Aug. 27, 2025) ........................... 2

*Ratermann v. Pierre Fabre USA, Inc.,*
651 F. Supp. 3d 657 (S.D.N.Y. 2023) ................................... 30

*Sapp v. Foxx,*
106 F.4th 660 (7th Cir.), *cert. denied*, 145 S. Ct. 446 (2024) ............... 23

*Simpkins v. CSX Transportation, Inc.,*
965 N.E.2d 1092 (Ill. 2012) ................................................. 21

*Social Media Cases,*
2023 WL 6847378 (Cal. Super. Oct. 13, 2023) .............................. 17, 18

*Sondag v. Pneumo Abex Corp.,*
55 N.E.3d 1259 (Ill. App. 2016).......................................... 18

*Sorrell v. IMS Health Inc.,*
564 U.S. 552 (2011) ........................................................... 30

Page(s)

*Sykes v. Cook Inc.*,
    72 F.4th 195 (7th Cir. 2023) ................................................................ 1

*Trahanas v. Northwestern University*,
    64 F.4th 842 (7th Cir. 2023) ............................................................... 31

*Vanzant v. Hill's Pet Nutrition, Inc.*,
    934 F.3d 730 (7th Cir. 2019) .............................................................. 22

*Vrdolyak v. Avvo, Inc.*,
    206 F. Supp. 3d 1384 (N.D. Ill. 2016) ............................................... 10

*Wells v. Freeman Co.*,
    94 F.4th 608 (7th Cir. 2024) ............................................................... 11

*Wince v. CBRE, Inc.*,
    66 F.4th 1033 (7th Cir. 2023) ............................................................. 19

*Winter v. Facebook, Inc.*,
    2021 WL 5446733 (E.D. Mo. Nov. 22, 2021) ..................................... 20

*Zedella v. Gibson*,
    650 N.E.2d 1000 (Ill. 1995) ................................................................ 21

*Ziencik v. Snap, Inc.*,
    2023 WL 2638314 (C.D. Cal. Feb. 3, 2023) ....................................... 17

## FEDERAL STATUTES

28 U.S.C. § 1291 ....................................................................................... 2

28 U.S.C. § 1332(a) .................................................................................. 2

47 U.S.C. § 230 ......................................................................................... 7

47 U.S.C. § 230(c)(1) .......................................................................... 23, 24

47 U.S.C. § 230(e)(2) ............................................................................... 30

47 U.S.C. § 230(f)(2) ........................................................................... 24, 27

47 U.S.C.§ 230(f)(4) ................................................................................. 27

## STATE STATUTES

740 ILCS 195/1 *et seq.* ............................................................................ 5

**Page(s)**

765 ILCS 1075/1 *et seq.*..................................................................................... 5

765 ILCS 1075/5 .................................................................................................. 9

765 ILCS 1075/30(a) .......................................................................................... 8

765 ILCS 1075/35(b)(1) ............................................................................... 9, 12

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 9(g) ............................................................. 15

Restatement (Second) of Torts § 402A (1965, Westlaw update) ................... 18

Restatement (Third) of Torts: Prods. Liab. § 19(b) (1998, Westlaw
    update) ....................................................................................................... 17

## JURISDICTIONAL STATEMENT

Plaintiff-Appellant Nikko D'Ambrosio's jurisdictional statement, ECF No. 28, is not complete and correct.[1]

D'Ambrosio appeals the District Court's May 13, 2025 order and judgment dismissing this suit with prejudice.  SA1-2 (Dkts. 98, 100); A62-96 (Dkt. 99).  On June 9, D'Ambrosio moved for an extension of time to appeal the May 13 order and judgment.  Dkt. 101.  On June 10, the District Court granted the motion, extending the deadline to July 11, 2025.  Dkt. 102.  D'Ambrosio timely filed his notice of appeal on July 11, 2025.  Dkt. 103.

D'Ambrosio's Second Amended Complaint—which is the operative complaint, and which brought only state law claims—invoked the District Court's subject matter jurisdiction "pursuant to 28 U.S.C. § 1332."  Dkt. 53 at 4.  Because this is not a putative class action, D'Ambrosio presumably meant 28 U.S.C. § 1332(a).

D'Ambrosio alleged that "the amount in controversy exceeds $75,000.00."  *Id.*; *see also* ECF No. 13 at 2.  "The plaintiff's allegations about the amount in controversy control unless the court concludes, 'to a legal certainty,' that 'the face of the pleadings' demonstrates 'that the plaintiff cannot recover' the jurisdictional minimum or that 'the proofs' show that 'the plaintiff never was entitled to recover that amount.'"  *Sykes v. Cook Inc.*, 72 F.4th 195, 205 (7th Cir. 2023) (citation omitted).

---

[1]      "ECF" refers to documents filed in this appeal.  "Dkt." refers to documents filed in No. 1:24-cv-678 (N.D. Ill.).  Pagination used for ECF citations corresponds to PDF pagination, and pagination used for Dkt. citations corresponds to the pagination of the Pacer header.  "OB" refers to D'Ambrosio's appeal brief; "A" refers to the Appendix to that brief; and "SA" refers to the Supplemental Appendix to this brief.

The respective citizenships of the current parties when this action commenced were as follows:

- Plaintiff Nikko D'Ambrosio was a citizen of Illinois;

- Defendant Meta Platforms, Inc. was incorporated in Delaware and had its principal place of business in California;

- Defendant Spill The Tea, Inc. was incorporated in Delaware and had its principal place of business in California;

- Defendants Paola Sanchez and Blake Millbrand were citizens of California; and

- Defendants Abbigail Rajala, Carol Rajala, and Rodney Rajala were citizens of Michigan.

ECF No. 13 at 1-2; ECF No. 27 at 2. Now that this Court has dismissed the Jane Doe defendants, ECF No. 22—for whom D'Ambrosio provided no citizenship information, *see* ECF No. 13 at 2—the parties are completely diverse. *See Rao v. J.P. Morgan Chase Bank, N.A.*, – F.4th –, 2025 WL 2462432, at *4 (7th Cir. Aug. 27, 2025) ("[A]ppellate courts can 'restore complete diversity, even when the case is on appeal and diversity was incomplete in the district court, by dropping a party whose presence is unnecessary to the proper resolution of the controversy.'" (citation omitted)).

Because the current parties are completely diverse and the jurisdictional minimum is satisfied, there is subject matter jurisdiction under 28 U.S.C. § 1332(a).

This Court has appellate jurisdiction under 28 U.S.C. § 1291, as this appeal is from a final judgment of the District Court.  SA2.

2

## ISSUES PRESENTED

1.   Whether the District Court correctly dismissed D'Ambrosio's claims against Meta for misappropriation under the Illinois Right of Publicity Act, unjust enrichment, defamation *per se* and *per quod*, invasion of privacy by false light and civil conspiracy, strict product liability, negligence, and negligent entrustment on the ground that each claim fails as a matter of Illinois law.

2.   Whether Section 230 of the Communications Decency Act bars D'Ambrosio's claims against Meta.

3.   Whether the First Amendment bars D'Ambrosio's claims against Meta.

## INTRODUCTION

It may be, as the District Court observed, that "[t]he realities of modern dating are complicated." A62.  But this case is not, and the District Court's judgment of dismissal should be affirmed.

Upset over posts made in a Facebook group for Chicago-area women, Plaintiff-Appellant Nikko D'Ambrosio "sued anyone remotely associated with th[e] posts for all possible, imaginable claims." A63.  After allowing D'Ambrosio to file a Second Amended Complaint in response to motions to dismiss directed at his First Amended Complaint, the District Court dismissed the case with prejudice, concluding that his claims—all under state law—failed as a matter of state law.

D'Ambrosio's appeal brief fails to engage with many of the grounds for dismissal articulated by the District Court.  Where D'Ambrosio does address the District Court's holdings, he fails to show any error.  That is because the District

Court was right: D'Ambrosio's claims suffer from fatal state-law defects that warranted dismissal with prejudice.

This Court can, and should, affirm on state-law grounds—the only issues the District Court reached. But federal law also bars D'Ambrosio's claims. Because those claims seek to impose liability on Meta for distributing third-party speech, Section 230 of the Communications Decency Act provides that Meta cannot be liable here. And even if Section 230 did not apply, the First Amendment would bar D'Ambrosio's claims.

## STATEMENT OF THE CASE

### A.    Factual Background

Plaintiff-Appellant Nikko D'Ambrosio alleges that he and Defendant-Appellee Abbigail Rajala had a brief romantic relationship. A11. Rajala later posted about D'Ambrosio in "Are We Dating the Same Guy? | Chicago," a Facebook Group where Chicago-area women share information about their dating experiences with the goal of helping one another avoid "toxic men." A4-5, A11.[2] Rajala's posts reported a negative experience with D'Ambrosio, whom she described as being "[v]ery clingy very fast," "[f]launt[ing]" his money, and warning her that she "d[id]n't want to see his bad side." A46. Rajala posted a photo of D'Ambrosio and a screenshot of a profane message he sent after she told him she did not want to stay the night. A45-46; Dkt. 71-2 (more legible copy of text message); *see also* A2, A12.

---

[2]    Although Abbigail and her Defendant-Appellee parents share a surname, "Rajala" refers to Abbigail unless otherwise specified.

Other Facebook users commented on Rajala's posts.  A45, A48.  One user posted a link to a CBS News article about a different man, Anthony LaMonica, who had been criminally charged with sexual assault.  A12, A45, A48.  LaMonica's name and photo were visible within that user's comments, and the comments did not mention D'Ambrosio or otherwise connect him with the article or LaMonica.  *See* A45, A48.

### B.    Procedural History

As relevant here, D'Ambrosio sued Rajala; her parents Rodney and Carol Rajala, who allegedly allowed Rajala to access Facebook through their home internet network; Spill the Tea, Inc., which allegedly "owns" "the 'Are We Dating the Same Guy?' communities"; Paola Sanchez and Blake Millbrand, owners of Spill the Tea and, together with the company, the "Spill the Tea Defendants"; and Meta, owner of Facebook.  A1-3, A11-12; *see also* Dkt. 1 (original complaint).  After Meta and the Spill the Tea Defendants moved to dismiss D'Ambrosio's First Amended Complaint, Dkts. 29, 38, 47, D'Ambrosio filed the Second Amended Complaint, which is the operative complaint.  In it, D'Ambrosio brings state-law claims for misappropriation under the Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq.*; unjust enrichment; defamation *per se* and *per quod*; doxing, *see* 740 ILCS 195/1 *et seq.*; false light invasion of privacy and civil conspiracy; strict product liability; negligence; and negligent entrustment.  A16-36.

Meta and the Spill the Tea Defendants again moved to dismiss, as did the Rajalas.  Dkts. 65, 71, 75, 76.  The District Court granted the motions and dismissed

D'Ambrosio's case with prejudice under Civil Rule 12(b)(6) for failure to state a claim. SA1-2 (Dkts. 98, 100); A62-96 (Dkt. 99).

In its 35-page opinion, the District Court thoroughly explained why D'Ambrosio's claims failed as a matter of state law. A62-96. Meta discusses the District Court's reasoning at greater length below. In brief, D'Ambrosio's IRPA claim failed because he did not plausibly allege that any defendant appropriated his likeness for a commercial purpose. A67-71. His defamation *per se* claim failed because he did not plausibly allege any false, non-opinion statement accusing him— as opposed to Anthony LaMonica—of a crime, or impugning his professional abilities or performance. A71-80. His defamation *per quod* claim failed for substantially the same reasons, and also because he did not plead specific damages. A80-81. His false light claim fell along with his failed defamation claims, and the associated civil conspiracy claim failed because civil conspiracy is not an independent tort under Illinois law. A81-82. And his doxing claim—which does not run against Meta, A20— failed because he did not plausibly allege the posting of any personally identifiable information as defined under Illinois law, and he merely parroted the statute's requirements with respect to intent and the effect of the challenged publication. A82-86.

The court next held that D'Ambrosio had waived his strict product liability, negligence, and negligent entrustment claims by failing to respond to Meta's arguments supporting dismissal. A86-88, A90. Even setting aside waiver, the court concluded that the claims failed on the merits, too. D'Ambrosio's strict product

liability claim failed because he did not plausibly allege that Meta's app and algorithm are products, as opposed to services, and also because he did not allege suffering any physical harm. A86-88. His negligence claim failed because, even assuming Meta owes a duty of care to its users, he specifically alleged that he was not a user of "Facebook or any other platform maintained by Meta." A88-89 (citation omitted). His negligent entrustment claim failed because Meta did not entrust chattels to its users when it provided them social-networking services. A89-91. And his unjust enrichment claim failed for want of any viable underlying cause of action. A91.

D'Ambrosio timely appealed. Dkts. 102-103.

## SUMMARY OF ARGUMENT

As the District Court correctly held, D'Ambrosio's claims fail as a matter of state law. The District Court correctly identified fatal defects with each claim, and D'Ambrosio—where he addresses those flaws at all—cannot overcome them.

Although Illinois law resolves this case, federal law independently bars D'Ambrosio's claims against Meta. First, Section 230 of the Communications Decency Act, 47 U.S.C. § 230, precludes liability for publishing third-party speech like the Facebook posts at issue here. Meta's alleged use of recommendation algorithms does not change the result. D'Ambrosio argues that Meta "selectively elevated content," OB 17, but that is a quintessential editorial decision of the kind publishers have made since the dawn of media and falls squarely within Section 230's ambit.

Second, the First Amendment bars D'Ambrosio's claims. D'Ambrosio seeks to impose liability on Meta for disseminating information. But that editorial conduct

qualifies for First Amendment protection, and D'Ambrosio does not plead any exception to that general rule.

Finally, and although D'Ambrosio offers no argument on this point, the District Court did not abuse its discretion in dismissing his claims with prejudice rather than giving him a chance to amend his complaint for a third time.

## STANDARD OF REVIEW

This Court reviews *de novo* the District Court's judgment dismissing D'Ambrosio's Second Amended Complaint for failure to state a claim. *See Jauquet v. Green Bay Area Cath. Educ., Inc.*, 996 F.3d 802, 807 (7th Cir. 2021).

If D'Ambrosio had presented argument on the issue, this Court would review for abuse of discretion the District Court's decision to dismiss this suit with prejudice rather than give him another chance to replead. *See Jauquet*, 996 F.3d at 807. But D'Ambrosio does not, thereby forfeiting the point. *See Dotson v. Faulkner*, 138 F.4th 1029, 1031 (7th Cir. 2025) ("Arguments omitted from an opening appellate brief are forfeited, if not waived.").

## ARGUMENT

## I.    D'AMBROSIO'S CLAIMS FAIL UNDER STATE LAW

### A.    IRPA

IRPA forbids "us[ing] an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent." 765 ILCS 1075/30(a). The statute expressly exempts the "use of an individual's identity" to "portray … that individual" in an "article" or "visual … work," so long as the work "does not constitute in and of itself a commercial advertisement for a product,

merchandise, goods, or services." 765 ILCS 1075/35(b)(1). D'Ambrosio's IRPA claim fails twice over: He does not allege that Meta used his identity for a commercial purpose, and Rajala's underlying post falls within IRPA's exception for portraying an individual in an article or visual work.[3]

### 1.    Failure to Plead Commercial Purpose

The District Court correctly held that D'Ambrosio failed to plead, as he must, that Meta used his identity for a commercial purpose. A67-71. IRPA defines "[c]ommercial purpose" narrowly to mean the "public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising." 765 ILCS 1075/5. As this Court has explained, "[i]t is not enough for [a plaintiff's] name and other information to appear on or within a product"; in addition, his "identity must help sell something." *Huston v. Hearst Commc'ns, Inc.*, 53 F.4th 1097, 1102 (7th Cir. 2022).

D'Ambrosio does not allege that Meta used his identity to sell or advertise its service or in a fundraiser. Instead, he argues that Meta "algorithmically amplified inflammatory content," including his likeness, "to maximize user engagement" to in turn drive ad revenue. OB 4; *see also* OB 6. As the District Court correctly held, that

---

[3]    Meta understands D'Ambrosio's IRPA claim against Meta to rest on Rajala's alleged posting of "a photograph owned and controlled by [D'Ambrosio] and containing his personal identity and likeness," A16-17; *see* OB 4, 6. To the extent the claim also implicates any other posts, it fails for the reasons given in Section I.A.1.

limitless vision of IRPA liability is meritless.  A69; *see Cross v. Facebook, Inc.*, 222 Cal. Rptr. 3d 250, 265, 268 (Ct. App. 2017) (California law) (in dismissing right of publicity claims, holding that "the appearance of advertisements next to a third party's use of [plaintiff's] identity is insufficient to demonstrate a commercial use by Facebook").  That conclusion is consistent with the settled principle that, in the First Amendment context, the presence of ads within a publication does not "convert" non-commercial speech into commercial speech. *Vrdolyak v. Avvo, Inc.*, 206 F. Supp. 3d 1384, 1388-89 (N.D. Ill. 2016); *see also, e.g.*, *Ad World, Inc. v. Township of Doylestown*, 672 F.2d 1136, 1139 (3d Cir. 1982) ("The fact that a publication carries advertisements or that it is for profit does not render its speech commercial for first amendment purposes.").

Far from helping D'Ambrosio, OB 5-6, this Court's decision in *Huston* supports Meta.  The plaintiff there alleged that Hearst Communications violated IRPA by selling mailing lists of magazine subscribers that included her name.  53 F.4th at 1099.  But the plaintiff "did not allege" that "prospective mailing list purchasers were able to see her or any other subscribers' information … prior to their purchase," or that "her name was used to sell or promote the mailing lists themselves." *Id.* at 1100. That "outcome determinative" shortcoming distinguished *Huston* from *Lukis v. Whitepages Inc.*, 542 F. Supp. 3d 831 (N.D. Ill. 2020), where the defendants allegedly used free previews containing the plaintiffs' identities to advertise the sale of background report services.  *Huston*, 53 F.4th at 1100-01; *see Lukis*, 542 F. Supp. 3d at 835-36.

The dispositive fact in *Huston* is present here: D'Ambrosio does not allege that Meta displayed his identity—or that of anyone else—to sell ads or services. At most, he suggests that Meta marketed ads by referencing user engagement. *E.g.*, A16. But just as Huston's mere presence on a mailing list did not support an IRPA claim even if it increased the list's value, the mere presence of a post referencing D'Ambrosio within a Facebook group does not mean that Meta used his identity for a commercial purpose, particularly where there is no plausible allegation that Meta ever referenced or otherwise leveraged D'Ambrosio's identity when selling ads.

As the District Court correctly recognized, D'Ambrosio's "argument would expand the bounds of the IRPA to include any time a website includes an individual's identity and happens to contain separate advertisements." A69. That "is not what the IRPA protects against." *Id.*

Any conceivable doubt on that score should be resolved in Meta's favor. "'Federal courts are loath[] to fiddle around with state law,' and especially circumspect when it comes to expanding liability under state law." *Wells v. Freeman Co.*, 94 F.4th 608, 618 (7th Cir. 2024) (citation omitted). So, even when "faced with two opposing and equally plausible interpretations of state law"—which is not the case here—this Court "'generally choose[s] the narrower interpretation which restricts liability.'" *Home Valu, Inc. v. Pep Boys*, 213 F.3d 960, 963 (7th Cir. 2000) (citation omitted). Consistent with these principles, the Court should decline D'Ambrosio's invitation, unsupported by state-court authority, to "create[]

11

substantially more liability" under IRPA than Illinois state courts have recognized. *Id.* (citation omitted).

### 2. Exemption for Portraying an Individual in an Article or Visual Work

Even if D'Ambrosio satisfied IRPA's commercial purpose element, Rajala's post containing D'Ambrosio's photograph falls within IRPA's express exemption for the "use of an individual's identity" to "portray … that individual" in an "article" or "visual … work," so long as the work "does not constitute in and of itself a commercial advertisement for a product, merchandise, goods, or services." 765 ILCS 1075/35(b)(1). The operative complaint makes clear that Rajala posted D'Ambrosio's photo in a visual work to portray what she viewed as her poor romantic experience with him. A11, A45; *see Love v. Simmons*, 2024 WL 809107, at *7-9 (N.D. Ill. Feb. 27, 2024) (rejecting IRPA claim involving plaintiff's appearance in a documentary); *Collier v. Murphy*, 2003 WL 1606637, at *1-3 (N.D. Ill. Mar. 26, 2003) (rejecting IRPA claim involving use of plaintiff's identity in a television show). The post plainly was not "in and of itself" a commercial advertisement, and D'Ambrosio does not argue otherwise on appeal, thereby forfeiting the point. *See* OB 3-6; *Dotson*, 138 F.4th at 1031.

### B. Defamation

Illinois law recognizes two forms of defamation: (i) defamation *per se*, which involves "statements so harmful to reputation that damages are presumed"; and (ii) defamation *per quod*, which involves "statements requiring extrinsic facts to show their defamatory meaning," and for which a plaintiff must plead special damages.

*Muzikowski v. Paramount Pictures Corp.* ("*Muzikowski I*"), 322 F.3d 918, 924, 927 (7th Cir. 2003).  D'Ambrosio brings both claims.  As the District Court correctly held, A71-81, both fail.

### 1.    Defamation *per se*

There are five categories of statements that can be defamatory *per se* under Illinois law.  *See Law Offs. of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1129 (7th Cir. 2022) (enumerating categories).  D'Ambrosio focuses on just one: words that impute commission of a crime.  OB 7-8.

As this Court has explained, "not all statements that fall into one of the[] five categories are necessarily actionable."  *Lott v. Levitt*, 556 F.3d 564, 568 (7th Cir. 2009).  A statement "is not *per se* defamatory" if it "is reasonably capable of an innocent construction"—which presents "a question of law for the court[] to resolve."  *Id.* at 568-69.  As relevant here, a statement is capable of an innocent construction if it can "reasonably be interpreted as referring to someone other than the plaintiff."  *Muzikowski I*, 322 F.3d at 924.  Specifically, "if a statement is capable of two reasonable constructions, one defamatory and one innocent, the innocent one will prevail."  *Muzikowski v. Paramount Pictures Corp.* ("*Muzikowski II*"), 477 F.3d 899, 904 (7th Cir. 2007) (citation omitted).  Thus, "Illinois has chosen a difficult standard" for establishing defamation *per se*—and one that consciously "favors defendants."  *Id.*  The District Court correctly concluded that D'Ambrosio cannot meet that standard.  A74-75.

D'Ambrosio argues that a non-party's comments on Rajala's posts linking to an article about a *different* man—Anthony LaMonica—falsely imply that *D'Ambrosio*

had committed a sexual crime.  OB 6-8.  That is as implausible as it sounds.
D'Ambrosio insists that the comments' "clear implication" was that D'Ambrosio "was
the man in the article."  OB 7.  But even on a motion to dismiss, the court need not
"take the plaintiff's interpretation of the allegedly defamatory words at face value."
*Lott*, 556 F.3d at 569 (emphasis omitted).  As the District Court explained, the posted
article "is clearly discussing a different person, both because the names are different,
but also because there are photos of the two men and they do not look alike."  A73;
*see* A45, A48.  Moreover, as the District Court noted, "there is no statement from [the
poster] that D'Ambrosio is Anthony LaMonica or that D'Ambrosio was ever accused,
charged, or convicted of sexual assault."  A73.

On these indisputable facts, D'Ambrosio cannot show that the comments' "*only*
reasonable reading[]" is "defamatory in nature."  *Lott*, 556 F.3d at 568.[4]  It follows
that his defamation *per se* claim fails as a matter of law.

## 2. Defamation *per quod*

D'Ambrosio's defamation *per quod* claim stumbles out of the gate.  As his own
authority confirms, in "any defamation *per quod* action" under Illinois law, "the
plaintiff must plead and prove special damages to recover."  *Bryson v. News Am.*
*Publ'ns, Inc.*, 672 N.E.2d 1207, 1221 (Ill. 1996); *see* OB 9 (citing *Bryson*).  And when

---

[4]    The District Court also rejected any defamation *per se* claim premised on
statements impugning D'Ambrosio's abilities or integrity in his profession.  A72,
A75-80.  D'Ambrosio does not address that issue on appeal, resulting in forfeiture.
*See Dotson*, 138 F.4th at 1031; *see* OB 7-8 (discussing only "[o]ne" of the "five
categories" of defamation *per se*: "statements that impute the commission of a
criminal offense").  And any such claim would fail on the merits for the reasons given
by the District Court.  A75-80.

a "federal court[] sit[s] in diversity, special damages must be specifically stated in a [*per*] *quod* claim." *Lott*, 556 F.3d at 570 (citing Fed. R. Civ. P. 9(g) and collecting cases).

As the District Court correctly concluded, A80-81, D'Ambrosio's defamation *per quod* claim fails because he "did not itemize his losses or plead specific damages of actual financial injury," *Muzikowski I*, 322 F.3d at 927. Instead, he offers only generic allegations of "emotional loss, loss of professional opportunities, and damages to his reputation." A35.

*Lott* confirms that such "general allegations, which make no effort to explain how any reputational damage translated into actual harm, are not enough" in this context. 556 F.3d at 570. There, this Court affirmed the dismissal of a defamation *per quod* claim where the plaintiff alleged, for example, "that he encountered people in job interviews and at academic seminars who understood" a particular book passage "to be a swipe at his professional reputation," but did "not describe what pecuniary losses he suffered as a result." *Id.* Likewise, "without a specific accounting of [his alleged] damages or an explanation of how the purported defamation caused them," D'Ambrosio's defamation *per quod* claim fails. *Id.*

## C.    False Light Invasion of Privacy, Civil Conspiracy

As D'Ambrosio admits (at 10), "when a false light invasion of privacy claim follows an unsuccessful defamation claim, the false light claim must also fail." *Gracia v. SigmaTron Int'l, Inc.*, 986 F.3d 1058, 1062 (7th Cir. 2021). Thus, as the District Court correctly held, his false light invasion of privacy claim falls along with his defamation claims. A81-82.

To state a false light claim, a plaintiff must plead that he "was placed in a false light before the public" that "would be 'highly offensive to a reasonable person,'" and that the defendant "acted with actual malice." *Pope v. Chron. Publ'g Co.*, 95 F.3d 607, 616 (7th Cir. 1996). Here, that analysis "tracks [the] assessment of the claim for defamation *per se*" rather than defamation *per quod*, because D'Ambrosio did not plead the special damages required to bring a defamation *per quod* claim. *Muzikowski I*, 322 F.3d at 927. Such a false light claim requires that the challenged publicity be "'of and concerning'" D'Ambrosio, a "requirement [that] is basically the same as the innocent construction rule" described above. *Id.* (citation omitted). Because the comments linking to an article about Anthony LaMonica "can reasonably be construed as referring to somebody other than" D'Ambrosio, "they are not 'of and concerning [D'Ambrosio],' and cannot state a false light claim." *Id.*

As a result, D'Ambrosio's civil conspiracy claim also fails. The only predicate for D'Ambrosio's claim that "Defendants combined to conduct [a] campaign of harassment and abuse" is his false light claim. A21-22. Under Illinois law, "[c]ivil conspiracy 'is not an independent tort.'" *Freydin*, 24 F.4th at 1133 (citation omitted). Accordingly, because D'Ambrosio "fail[s] to state an independent cause of action underlying the alleged conspiracy, [his] civil conspiracy claim[] cannot stand." *Id.*; *see also* A81-82 (concluding same).

**D.     Strict Product Liability**

The District Court correctly held that D'Ambrosio waived his product liability claim by failing to respond to Meta's arguments supporting dismissal. A86-87; *see* Dkt. 65 at 7. "On appeal, [D'Ambrosio] does not even address the waiver holding, and

therefore has alleged no basis to reverse the district court on that ground." *Rahn v. Bd. of Trs. of N. Ill. Univ.*, 803 F.3d 285, 291 (7th Cir. 2015); *see* OB 16-20. That alone warrants affirming dismissal of the product liability claim. But even if this Court were to look past D'Ambrosio's double forfeiture, the District Court was right to conclude, in the alternative, that D'Ambrosio's strict product liability claim fails on the merits for two independent reasons. A87-88.

First, Facebook is a service—not a product—and strict product liability generally "does not extend to services." *Milford v. Com. Carriers, Inc.*, 210 F. Supp. 2d 987, 990 (N.D. Ill. 2002); *see also* Restatement (Third) of Torts: Prods. Liab. § 19(b) (1998, Westlaw update) ("Services, even when provided commercially, are not products."). Much as libraries and bookstores make books available—and even recommend particular books—Facebook provides the service of making online content available to users. Courts routinely and correctly reject product liability claims rooted in the provision of online services like Facebook's. *E.g.*, *Soc. Media Cases*, 2023 WL 6847378, at *9, *15-19 (Cal. Super. Oct. 13, 2023) (California law) (concluding that "social media platforms," including Facebook, "are not analogous to tangible products for purposes of product liability analysis" (capitalization normalized)); *Jackson v. Airbnb, Inc.*, 639 F. Supp. 3d 994, 1010-11 (C.D. Cal. 2022) (California law) (dismissing product liability claim because Airbnb's platform is "more akin to a service than to a product"); *Ziencik v. Snap, Inc.*, 2023 WL 2638314, at *4 (C.D. Cal. Feb. 3, 2023) (California law) (dismissing product liability claims because "Snapchat is more like a service than a product"). As the Sixth Circuit has

explained, a product liability claim cannot rest on "words and images," and "internet transmissions are not sufficiently 'tangible' to constitute products in the sense of their communicative content." *James v. Meow Media, Inc.*, 300 F.3d 683, 701 (6th Cir. 2002) (Kentucky law).

In arguing otherwise, D'Ambrosio cites *Lemmon v. Snap, Inc.*, 995 F.3d 1085 (9th Cir. 2021), and *Anderson v. TikTok, Inc.*, 116 F.4th 180 (3d Cir. 2024). But those cases considered a distinct issue—the scope of Section 230 of the Communications Decency Act—and did not analyze whether Snap and TikTok were "products" in the first place. *See Anderson*, 116 F.4th at 182-84; *Lemmon*, 995 F.3d at 1090-95; *see also Soc. Media Cases,* 2023 WL 6847378, at *17 ("*Lemmon* is not a precedent for an issue not decided and not necessary to the decision that was rendered."); *Jackson*, 639 F. Supp. 3d at 1011 (rejecting the argument "that the Ninth Circuit recognized a products liability claim in *Lemmon*").

In any event, D'Ambrosio's product liability claim fails for a second, independent reason: He does not allege "'physical harm,'" which "is an essential element of any action for products liability." *Sondag v. Pneumo Abex Corp.*, 55 N.E.3d 1259, 1263 (Ill. App. 2016); *see also* Restatement (Second) of Torts § 402A (1965, Westlaw update) (describing strict liability for "physical harm"). Instead, D'Ambrosio alleges only "reputational, emotional, and financial harm." A26. As the District Court recognized, A88, that is not enough to state a product liability claim. D'Ambrosio does not address this fatal flaw at all, *see* OB 16-20, thereby forfeiting the point. *See Dotson*, 138 F.4th at 1031 ("[W]hen the district court decides a case on

18

a particular ground, that subject must be addressed in the appellant's opening brief, if appellant wants it reviewed.").

### E. Negligence

As with his product liability claim, the District Court held that D'Ambrosio waived his negligence claim by failing to address Meta's arguments supporting dismissal. A88; *see* Dkt. 65 at 8. D'Ambrosio's failure to address that holding, *see* OB 16-20, is a forfeiture warranting affirmance. *See Rahn*, 803 F.3d at 291. D'Ambrosio likewise fails to address the District Court's alternative holding with respect to his negligence claim—Meta owed him no duty—resulting in a double forfeiture. A88-89; *see* OB 16-20; *Wince v. CBRE, Inc.*, 66 F.4th 1033, 1043 (7th Cir. 2023) (plaintiff's "failure to address the basis of the [district] court's holding means he has waived his claim" on appeal). And aside from forfeiture, D'Ambrosio's claim fails on the merits.

It is axiomatic that "[u]nless a duty is owed, there is no negligence." *Am. Nat'l Bank & Tr. Co. of Chi. v. Nat'l Advert. Co.*, 594 N.E.2d 313, 318 (Ill. 1992). The District Court held that, even assuming Meta owed its *own users* a duty, D'Ambrosio "plead[ed] himself out of court by alleging that he 'has never created or maintained an account on Facebook or any other platform maintained by Meta' and thus is not a 'user' of Meta's services." A89 (citation omitted).[5] D'Ambrosio's appeal brief says nothing on this score. *See* OB 18-20.

---

[5] As the District Court recognized, A89 & n.13, there is no need to address whether Meta owes a duty of care to users. *See Klayman v. Zuckerberg*, 753 F.3d 1354, 1359-60 (D.C. Cir. 2014).

*Doe v. GTE Corp.*, 347 F.3d 655 (7th Cir. 2003), confirms that the District Court was correct. There, this Court rejected the notion "that a service provider must take reasonable care to prevent injury to third parties." *Id.* at 661. For example, "telephone companies are free to sell phone lines … without endeavoring to find out what use the customers make of the service." *Id.* Even if a "[l]andlord, phone company, delivery service, [or] web host … could learn" what a third party was "doing with the[ir] services and who was potentially injured as a result," "state law does not require these providers to learn, or to act as Good Samaritans if they do." *Id.* (emphasis omitted). As other courts have recognized, the rule is the same for services like Meta's. *See Winter v. Facebook, Inc.*, 2021 WL 5446733, at *1, *6 (E.D. Mo. Nov. 22, 2021) (Missouri law) (dismissing negligence claim against Facebook and TikTok because no duty of care existed to alleged victims of posts); *Ginsberg v. Google Inc.*, 586 F. Supp. 3d 998, 1009 (N.D. Cal. 2022) (California law) ("Google does not owe a general duty to the public based on its operation of the Play Store."); *see also Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1101 (9th Cir. 2019) ("No website could function if a duty of care was created when a website facilitates communication, in a content-neutral fashion, of its users' content."). Without a duty, D'Ambrosio's negligence claim fails.

Although the District Court had no occasion to reach it, D'Ambrosio's negligence claim suffers from an additional defect: Even if Meta owed a duty to D'Ambrosio in this context, and even if Meta breached that duty, D'Ambrosio would still need to plead that the breach proximately caused his purported injuries. *E.g.*,

*Simpkins v. CSX Transp., Inc.*, 965 N.E.2d 1092, 1096 (Ill. 2012).  And making third-party content available is not enough to allege proximate cause of injuries arising from that third-party content.  *See M.P. ex rel. Pinckney v. Meta Platforms Inc.*, 127 F.4th 516, 527-28 (4th Cir.) (South Carolina law) (affirming dismissal of claims alleging that shooter became radicalized on Facebook based on lack of proximate causation), *cert denied*, No. 24-1133, 2025 WL 2824590 (Oct. 6, 2025); *Crosby v. Twitter, Inc.*, 921 F.3d 617, 622-26 (6th Cir. 2019) (federal law) (affirming dismissal of claims regarding dissemination of terrorism content, including against Facebook, based on lack of proximate causation); *see also Chi. Lawyers' Comm. for C.R. Under L., Inc. v. Craigslist, Inc.*, 519 F.3d 666, 671 (7th Cir. 2008) ("Doubtless craigslist plays a causal role in the sense that no one could post a discriminatory ad if craigslist did not offer a forum.  That is not, however, a useful definition of cause.").

### F.    Negligent Entrustment

The District Court held that D'Ambrosio waived his negligent entrustment claim by failing to address Meta's arguments supporting dismissal.  A90; *see* Dkt. 65 at 8-9.  Once again, D'Ambrosio compounds his waiver by failing to address that holding on appeal.  *See* OB 16-20; *Rahn*, 803 F.3d at 291.  D'Ambrosio's claim fails on the merits in any event.

"An action for negligent entrustment 'consists of entrusting a dangerous article to another whom the lender knows, or should know, is likely to use it in a manner involving an unreasonable risk of harm to others.'"  *Zedella v. Gibson*, 650 N.E.2d 1000, 1002 (Ill. 1995) (citation omitted).  On appeal, D'Ambrosio posits that "Meta provided unregulated moderation tools, anonymous publishing mechanisms, and

automated visibility boosts to the operators of 'Are We Dating the Same Guy?'" OB 18-19. But as the District Court correctly concluded, A90-91, such functions are not the kind of "dangerous article or instrumentality" that can support a negligent entrustment claim. *Garland v. Sybaris Clubs Int'l, Inc.*, 141 N.E.3d 730, 748 (Ill. App. 2019) (citation omitted).

D'Ambrosio does not acknowledge or engage with the District Court's reasoning, which is reason enough to reject his challenge on appeal. *See Dotson*, 138 F.4th at 1031. And once again, this Court's decision in *GTE Corp.* confirms that the District Court was correct. There, this Court rejected a negligent entrustment of chattels claim brought against an internet service provider. 347 F.3d at 660-61. Although the provider "supplied some inputs (server space, bandwidth, and technical assistance)" that "enabled [other defendants] to post a web site and conduct whatever business [they] chose," providing those *services* did not amount to negligently entrusting *chattels*. *Id.* at 657, 661. So too here.

### G. Unjust Enrichment

"Under Illinois law, unjust enrichment is not a separate cause of action." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739 (7th Cir. 2019) (citation omitted). Because "all D'Ambrosio's underlying claims fail[], necessarily his unjust enrichment claim suffers the same fate." A91. D'Ambrosio, who does not specifically address unjust enrichment in his appeal brief, does not dispute that (correct) result, thereby forfeiting the point. *See Dotson*, 138 F.4th at 1031.

## II.    SECTION 230 BARS D'AMBROSIO'S CLAIMS AGAINST META

Although the Court can and should affirm on the state-law grounds articulated by the District Court and go no further, Section 230 of the Communications Decency Act independently bars D'Ambrosio's claims against Meta.[6]

"[C]ourts uniformly recognize" that Section 230 "immunizes internet services for third-party content that they publish, including false statements, against causes of action of all kinds." *Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263, 1267 (D.C. Cir. 2019); *see also Force v. Facebook, Inc.*, 934 F.3d 53, 64 (2d Cir. 2019) (noting "general agreement" that Section 230 "should be construed broadly in favor of immunity").[7]  Specifically, Section 230(c)(1) states that "[n]o provider … of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1). Thus, the statute precludes liability where (1) the defendant provides an "'interactive computer service'" and (2) "is being 'treated as the publisher or speaker'" of (3) "'information provided by another information content provider.'"  *G.G. v.*

---

[6]    Affirmative defenses, including Section 230, can defeat claims at the pleading stage where "the factual allegations in the complaint unambiguously establish all the elements of the defense."  *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 566 (7th Cir. 2023); *see also GTE Corp.*, 347 F.3d at 657 (reviewing Section 230 defense where defendants had sought dismissal under Rule 12(b)(6)); *Sapp v. Foxx*, 106 F.4th 660, 664-65 (7th Cir.) (considering affirmative defenses raised in a Rule 12(b)(6) posture), *cert. denied*, 145 S. Ct. 446 (2024); *Klayman*, 753 F.3d at 1357 (affirming dismissal while recognizing that Section 230 is an affirmative defense).

[7]    This Court interprets Section 230(c)(1) to create an affirmative defense rather than to confer immunity.  *See G.G.*, 76 F.4th at 566.  That distinction does not diminish the persuasive force of decisions from other courts underscoring the breadth of Section 230's protections in holding that it confers immunity.

*Salesforce.com, Inc.*, 76 F.4th 544, 566 (7th Cir. 2023) (quoting 47 U.S.C. § 230(c)(1)). Each element is satisfied as to Meta.

### A.     Meta Provides "An Interactive Computer Service"

Meta operates Facebook, which uncontroversially is an "interactive computer service" under Section 230.  It is an "information service … that provides or enables computer access by multiple users to a computer server."  47 U.S.C. § 230(f)(2); *e.g.*, *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014) ("Facebook qualifies as an interactive computer service.").  D'Ambrosio does not argue otherwise.  *See* OB 16-17.

### B.     The Posts Were Made By "[O]ther Information Content Provider[s]"

It is beyond dispute that the information at issue originated with "another information content provider."  D'Ambrosio does not plead that any allegedly defamatory information originated with Meta.  Rather, he alleges that Rajala and a Jane Doe posted defamatory comments about him on Facebook and that Rajala posted his photo.  A11-12.  Rajala and the Doe commenter are "information content provider[s]" under 47 U.S.C. § 230(f)(3).  *See Force*, 934 F.3d at 68-71.  Again, D'Ambrosio does not, and cannot, argue otherwise.  *See* OB 16-17.[8]

---

[8]     In opposing dismissal in the District Court, D'Ambrosio argued that Meta's algorithms were "in effect … co-creators of engagement-driven content." A101.  But courts wisely reject the theory that algorithms alone take publishing decisions outside Section 230's scope.  *See infra* at 27-28.  D'Ambrosio further argued that Meta's "use of generative AI tools and algorithmic features … transform[s] user-submitted content into derivative works." A104-05.  But that theory essentially posits that Meta "provide[s] neutral tools" by which *users* may "carry out what may be unlawful or illicit"—which does not transform Meta itself into a content provider.

### C.     D'Ambrosio Impermissibly Treats Meta As A "Publisher"

Finally, D'Ambrosio treats Meta as a "publisher" of third-party content. Although D'Ambrosio attempts to repackage publisher liability under different labels, "what matters is not the name of the cause of action," but rather whether the claim "inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101-02 (9th Cir. 2009). Here, each claim stems from Meta's publication of content "originating with third-party users of the service." *Johnson v. Arden*, 614 F.3d 785, 792 (8th Cir. 2010).

Across his various claims, D'Ambrosio seeks to hold Meta liable for "intentionally republish[ing]," "cho[osing] to display," "retransmit[ting]," "facilitat[ing] the widespread dissemination of," "select[ing]," "broadcast[ing]," "present[ing]," "[f]ailing to timely remove," "amplif[ying]," and "publish[ing]" third-party content. A16-17 (IRPA); A19 (defamation *per se*); A21-22 (false light); A25 (strict product liability); A29 (negligence); A34 (negligent entrustment); A35 (defamation *per quod*). As these verbs reveal, his claims target quintessential publishing activities. D'Ambrosio's prayer for relief confirms as much: He requests "[i]njunctive relief requiring Defendant Meta Platforms to adjust its recommendation algorithms," changing the kind of "content" Meta "amplifi[es]." A36. But Section 230 protects publishers from liability for their publication choices, regardless of the cause

---

*Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101 n.6 (9th Cir. 2009) (emphasis and citation omitted).

25

of action a plaintiff invokes. *See Force*, 934 F.3d at 64 n.18 (explaining that Section 230 applies to "'a wide variety of causes of actions'" and "not only to defamation claims, where publication is an explicit element" (citation omitted)); *Barnes*, 570 F.3d at 1102 ("[A] plaintiff cannot sue someone for publishing third-party content simply by changing the name of the theory from defamation to negligence."); *G.G.*, 76 F.4th at 567 (agreeing with *Barnes* that "the name of the cause of action" does not determine Section 230's applicability (citation omitted)).

Invoking product liability law does not change that result (even if D'Ambrosio had not waived his product liability claim, A86-87). D'Ambrosio alleges that Meta created a defectively designed algorithm that circulated defamatory content. A27; *see* OB 16-17. But courts routinely hold that Section 230 bars product liability claims challenging algorithms and other features because they are "meant to facilitate the communication and content of others." *Doe v. Grindr Inc.*, 128 F.4th 1148, 1153 (9th Cir. 2025) (citation omitted) (defective design, defective manufacturing, and negligence), *cert. denied*, No. 24-1202 (Oct. 14, 2025); *see also, e.g.*, *Est. of Bride ex rel. Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1179-82 (9th Cir. 2024) (design defect and negligence), *cert. denied*, 145 S. Ct. 1435 (2025); *Herrick v. Grindr LLC*, 765 F. App'x 586, 590-91 (2d Cir. 2019) (manufacturing and design defect); *Lama v. Meta Platforms, Inc.*, 732 F. Supp. 3d 214, 222 (N.D.N.Y. 2024) (claims including design defect).

Apparently recognizing that Meta cannot be liable for "host[ing] an online forum" where "third-party users … submit comments," *Huon v. Denton*, 841 F.3d 733,

741 (7th Cir. 2016), D'Ambrosio argues that Meta has gone "beyond passive hosting" by making "design choices that fuel and disseminate" particular content. OB 16. He then asserts in a conclusory manner that Meta's "choices" about the content to "selectively elevate[]" "are not editorial judgments protected by CDA § 230." *Id.* at 17. As the Second Circuit correctly recognized, that theory is wrong because it "would eviscerate Section 230(c)(1)." *Force*, 934 F.3d at 66.

The reason is plain. "[P]latforms rely heavily on algorithms to organize and censor content." *Moody v. NetChoice, LLC*, 603 U.S. 707, 770 (2024) (Alito, J., concurring in the judgment). Algorithms of the kind D'Ambrosio alleges "facilitate the communication and content of others," though they "are not content in and of themselves." *Dyroff*, 934 F.3d at 1098. But in D'Ambrosio's view, "a defendant interactive computer service would be ineligible for Section 230(c)(1) [protection] by virtue of simply organizing and displaying content exclusively provided by third parties." *Force*, 934 F.3d at 66. Such a rule would not only strip protection from a huge swath of interactive computer service providers, but also "turn Section 230(c)(1) upside down" by "hold[ing] that Congress intended that when publishers of third-party content become especially adept at performing the functions of publishers, they are no longer [protected] from civil liability." *Id* at 67. That makes no sense. *See* 47 U.S.C. § 230(f)(2), (4) (defining "interactive computer service" to include "a provider of software" or "enabling tools that," among other things, "pick," "choose," or "organize" content).

Publishers sought to curate and promote third-party content long before the digital age. "For instance, newspaper editors choose what articles merit inclusion on their front page and what opinion pieces to place opposite the editorial page"—decisions that, "like Facebook's decision to recommend certain third-party content to specific users, have as a goal increasing consumer engagement." *M.P.*, 127 F.4th at 526. "[T]he fact that Facebook uses an algorithm to achieve the same result of engagement does not change the underlying nature of the act that it is performing." *Id.* "Decisions about whether and how to display" third-party content "are traditional editorial functions of publishers," and Section 230's protections do not turn on "the various methods [publishers] use in performing that task." *Id.*; *see also Force*, 934 F.3d at 67 (rejecting the proposition that Congress "intended to restrain the automation of interactive computer services' publishing activities in order for them to retain immunity"). Courts roundly reject attempts to circumvent Section 230 by invoking the defendant's use of algorithms. *E.g.*, *M.P.*, 127 F.4th at 524-27; *Dyroff*, 934 F.3d at 1097-98; *Force*, 934 F.3d at 65-68; *Patterson v. Meta Platforms, Inc.*, 239 N.Y.S.3d 726, 731-36 (App. Div. 2025); *see also, e.g.*, *Doe 1 v. Twitter, Inc.*, 148 F.4th 635, 644-47 (9th Cir. 2025) (Section 230 barred liability based on features that allegedly "amplif[y] the reach" of illicit content). This Court should do the same.

In suggesting otherwise, D'Ambrosio cites *Gonzalez v. Google LLC*, 598 U.S. 617 (2023) (per curiam). But that short, unsigned opinion expressed no view on the merits of any Section 230 issue and thus does not speak to whether Section 230's scope turns on whether a human publisher or an algorithm is the one "promoting"

28

third-party content. Section 230 precludes liability for Meta's quintessential publishing decisions.

D'Ambrosio does not expressly argue that the posts at issue constituted Meta's *own* speech, *see* OB 16-17, and any such argument would fail, *see supra* at 24 & n.8. That distinguishes this case from the Third Circuit's outlier decision in *Anderson*, which held that a TikTok algorithm was "TikTok's own expressive activity" subject to protection under the First Amendment but not under Section 230. 116 F.4th at 184; *see also id.* at 184 n.13 (recognizing tension between its holding and decisions of eight other circuits); *cf. Chi. Lawyers' Comm.*, 519 F.3d at 671. The First Amendment and Section 230 are not "mutually exclusive." *Doe (K.B.) v. Backpage.com, LLC*, 768 F. Supp. 3d 1057, 1063 (N.D. Cal. 2025) (rejecting the proposition "that editorial decisions cannot be both an expression of a publisher's point of view (protected under the First Amendment) and a publication of a third-party's content (protected under Section 230)"). But even if they were, and even if *Anderson* were correctly decided and precedential here, D'Ambrosio still would not prevail. First, he does not plausibly allege that he was defamed by Meta's own expression, unmediated by user inputs. *See Anderson*, 116 F.4th at 184 n.12 (explaining that the court "reach[ed] [its] conclusion specifically because" the algorithmic output at issue "was not contingent upon any specific user input"). To the contrary, D'Ambrosio alleges that individuals must take affirmative steps to see the posts at issue here. A6, A13. And, in any event, the First Amendment protects Meta's editorial choices here. *See infra* Section III.

29

Nor does D'Ambrosio argue on appeal that his IRPA claim falls within Section 230's carveout for intellectual property claims.  *See* 47 U.S.C. § 230(e)(2). With good reason: That exception is best read to reach only federal, not state, intellectual property law.  *See Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118-19 (9th Cir. 2007).  In any event, as this Court has explained, Illinois' right of publicity is a "branch of the right of *privacy*," *Douglass v. Hustler Mag., Inc.*, 769 F.2d 1128, 1138 (7th Cir. 1985) (emphasis added)—not intellectual property.  *See Ratermann v. Pierre Fabre USA, Inc.*, 651 F. Supp. 3d 657, 665, 668-70 (S.D.N.Y. 2023) (concluding that a New York analog to IRPA "sounds in privacy, not intellectual property," and does not fall within Section 230's intellectual property exception).  For both reasons, Section 230's intellectual property exception does not save D'Ambrosio's IRPA claim from the Section 230 bar.

## III.  THE FIRST AMENDMENT BARS D'AMBROSIO'S CLAIMS AGAINST META

Finally, D'Ambrosio's claims are defeated by the First Amendment.

First Amendment protections are not limited to those who create or originate speech: "[T]he creation *and dissemination* of information are speech within the meaning of the First Amendment."  *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011) (emphasis added).  The Supreme Court recently confirmed that such protections extend to websites when engaged in "compiling and curating others' speech."  *Moody*, 603 U.S. at 731.  That is unsurprising, as "[d]eciding on the third-party speech that will be included in or excluded from a compilation—and then

organizing and presenting the included items—is an expressive activity of its own." *Id.*

Regardless of D'Ambrosio's varied pleading labels, nothing in the operative complaint defeats the application of these First Amendment principles to his claims against Meta. Each claim is premised on Meta's choices regarding what content to disseminate and how such content is displayed to users. *See supra*, Section II.C. D'Ambrosio thus seeks to impose liability on Meta for exercising its First Amendment right to disseminate protected third-party speech and to engage in protected "editorial discretion in the selection and presentation" of content. *Moody*, 603 U.S. at 731 (citation omitted).

True enough, the First Amendment does not protect "factual assertion[s]" that are defamatory. *Trahanas v. Nw. Univ.*, 64 F.4th 842, 859 (7th Cir. 2023) (citation omitted). But, as explained above, D'Ambrosio's defamation claims fail. *See supra* Section I.B. And although commercial speech receives more limited First Amendment protection, D'Ambrosio does not plausibly allege that Meta's purported conduct qualifies as commercial speech. *See Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 517 (7th Cir. 2014) (discussing framework for identifying commercial speech, which requires more than just "an economic motivation" (citation omitted)); *see generally supra* Section I.A.1.

Finally, D'Ambrosio vaguely suggests that Meta amplified "dangerous" content. OB 16. That "'perfunctory'" argument is "waived" for lack of development. *Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018) (per curiam) (citation omitted). In

any event, D'Ambrosio does not plead that Meta published speech "dangerous" to him. It is simply not plausible, for instance, that comments indicating that *another man* (Anthony LaMonica) committed a sexual offense created any danger to *D'Ambrosio*. A86 (concluding, in dismissing D'Ambrosio's doxing claim, that "D'Ambrosio does not allege facts establishing any of the Defendants' knowledge or reckless disregard" that he "would be reasonably likely to suffer death, bodily injury, or stalking").

## IV.   DISMISSAL WITH PREJUDICE WAS APPROPRIATE

D'Ambrosio develops no argument that the District Court abused its discretion in dismissing his case with prejudice after three pleading attempts, thereby forfeiting the point. *See Dotson*, 138 F.4th at 1031. And the District Court did not abuse its discretion: "[I]n court, as in baseball, three strikes and you're out." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818-19 (7th Cir. 2013) (affirming dismissal of complaint that was plaintiff's "third try").

D'Ambrosio suggests without elaboration that he "should have been allowed discovery before dismissal with prejudice." OB 3. But as the District Court correctly concluded, D'Ambrosio's requested "discovery into how Meta's algorithm operates and Meta's internal operations … would not resolve any of the issues fatal to his complaint." A94.

32

## CONCLUSION

This Court should affirm the District Court's judgment dismissing with prejudice D'Ambrosio's claims against Meta.

Dated: October 14, 2025                    Respectfully submitted,

                                           */s/ Gary Feinerman*

Melanie M. Blunschi                        Gary Feinerman
LATHAM & WATKINS LLP                       LATHAM & WATKINS LLP
505 Montgomery Street                      330 North Wabash Avenue
Suite 2000                                 Suite 2800
San Francisco, CA 94111                    Chicago, IL 60611
(415) 391-0600                             (312) 876-7700

                                           Kristin C. Holladay
                                           LATHAM & WATKINS LLP
                                           1271 Avenue of the Americas
                                           New York, NY 10020
                                           (212) 906-1200

                                           *Counsel for Defendant-Appellee*
                                           *Meta Platforms, Inc.*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the type-volume limitations of Circuit Rule 32(c) because it contains 8,332 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).  I further certify that this brief complies with the typeface requirements of Circuit Rule 32(b) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using a proportionally spaced 12-point font.

*/s/ Gary Feinerman*
Gary Feinerman

**SUPPLEMENTAL APPENDIX**

**TABLE OF CONTENTS TO SUPPLEMENTAL APPENDIX**

| Description | Page |
|---|---|
| Notification of Docket Entry for Order Granting Motions to Dismiss (filed May 13, 2025), ECF No. 98 | Suppl. App. 1 |
| Judgment in a Civil Case (filed May 13, 2025), ECF No. 100 | Suppl. App. 2 |

## UNITED STATES DISTRICT COURT
### FOR THE Northern District of Illinois − CM/ECF NextGen 1.8 (rev. 1.8.3)
### Eastern Division

Nikko D' Ambrosio

Plaintiff,

v.

Case No.: 1:24−cv−00678
Honorable Sunil R. Harjani

Meta Platforms, Inc., et al.

Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Tuesday, May 13, 2025:

    MINUTE entry before the Honorable Sunil R. Harjani: For the reasons provided in
the Memorandum Opinion and Order entered today, Defendants' motions to dismiss [65]
[71] [75] [76] are granted. As Plaintiff has already had multiple opportunities to amend his
claims and any further amendments would be futile, the Court dismisses D'Ambrosio's
Second Amended Complaint with prejudice. Civil case terminated. Mailed notice(lxs, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of
Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was
generated by CM/ECF, the automated docketing system used to maintain the civil and
criminal dockets of this District. If a minute order or other document is enclosed, please
refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our
web site at ***www.ilnd.uscourts.gov***.

ILND 450 (Rev. 10/13) Judgment in a Civil Action Case: 1:24-cv-00678 Document #: 100 Filed: 05/13/25 Page 1 of 1 PageID #:769

## IN THE UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN DISTRICT OF ILLINOIS

Nikko D' Ambrosio,

Plaintiff(s),

v.

Meta Platforms, Inc. et al,

Defendant(s).

Case No.  24 C 00678
Judge Sunil R. Harjani

### JUDGMENT IN A CIVIL CASE

Judgment is hereby entered (check appropriate box):

☐    in favor of plaintiff(s)
and against defendant(s)
in the amount of $            ,

which ☐ includes          pre–judgment interest.
☐ does not include pre–judgment interest.

Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.

Plaintiff(s) shall recover costs from defendant(s).

_____

☐    in favor of defendant(s)
and against plaintiff(s)

.
Defendant(s) shall recover costs from plaintiff(s).

_____

☒    other: For the reasons provided in the Memorandum Opinion and Order [99] entered today, Defendants' motions to dismiss [65][ 71][ 75][76] are granted. As Plaintiff has already had multiple opportunities to amend his claims and any further amendments would be futile, the Court dismisses D'Ambrosio's Second Amended Complaint with prejudice.

This action was (check one):

☐ tried by a jury with Judge       presiding, and the jury has rendered a verdict.
☐ tried by Judge       without a jury and the above decision was reached.
 X  decided by Judge Harjani on Defendants' motions to dismiss [65][ 71][ 75][76].

Date:  5/13/2025                    Thomas G. Bruton, Clerk of Court

                                   Lynette Santiago, Deputy Clerk