# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

| | | |
|---|---|---|
| NIKKO D'AMBROSIO, | ) | |
|     Plaintiff-Appellant, | ) | |
|   v. | ) | |
| | ) | |
| ABBIGAIL RAJALA, | ) | |
| CAROL RAJALA, RODNEY RAJALA, | ) | |
| PAOLA SANCHEZ, | ) | On Appeal from the United |
| BLAKE MILLBRAND, | ) | States District Court for the |
| META PLATFORMS, INC., a Delaware Corporation, | ) | Northern District of Illinois, |
| SPILL THE TEA, INC., a Delaware Corporation, | ) | Eastern Division |
| JANE DOES 1-26, Unnamed Defendants using screen | ) | |
| names: Sam Daniels, Alexis Kyle, Coraline Lotz, | ) | Case No. 1:24-cv-00678 |
| Dianne Wesley, Madison Pierce, Madison Bynum, | ) | Appellate Case No:25 -2231 |
| Vanessa Villatoro, Christy Graessle, Sharleen Waa, | ) | Hon. Sunil R. Harjani, |
| Kaitlyn Mishay Moody, Linda Juarez, Amber Michelle, | ) | District Judge |
| Laura Maddox, Alina Drake, Chandi Constance, | ) | |
| Alicia Ann, Salisha P. Dean, Jillian Cara, Jen Rahbar, | ) | |
| Shannon Marie, Luisa Resendez, Daryl Ceasar, Lisa Miko, | ) | |
| Amy Dukstein-Reynolds, Melissa Pinkerton, Monica Tska, | ) | |
|     Defendants-Appellees. | ) | |

## REPLY BRIEF OF PLAINTIFF–APPELLANT NIKKO D'AMBROSIO

**Aaron Walner**
TRENT LAW FIRM, P.C.
1449 S. Michigan Ave., Suite 13201
Chicago, IL 60605
(630) 682-3100
service@trentlawfirm.com

*Counsel for Plaintiff–Appellant Nikko D'Ambrosio*

# TABLE OF CONTENTS

I. Summary of the Argument……………………………………………………....……..1-2

II. Argument..................................................................................................................2-7

    I.    IRPA: "In connection with" advertising/fundraising is plausibly pled;
the § 35(b)(1) "visual work" exception cannot defeat the pleadings.......................2-3

    II.    Illinois Anti-Doxing Act: Name/face in context is PII; intent and likely harm
are plausibly alleged ...............................................................................................3-4

    III.    Defamation and False Light: The thread's juxtaposition states a claim; liability
is not confined to the literal poster; per quod damages are adequately pled in the
alternative ...............................................................................................................4-5

    IV.    Section 230: Appellees' conduct-based design and operational choices are not
categorically immune; dismissal on § 230 at Rule 12 is premature .......................5-6

    V.    First Amendment: These claims regulate tortious conduct and unprotected
defamation/doxing, not viewpoints .........................................................................6

    VI.    Negligence, Product Liability, and Negligent Entrustment (Meta): The claims
target Meta's own product design/entrustment and should proceed .........................7

    VII.    Unjust Enrichment: Revives with the predicate torts ......................................7

    VIII.    Dismissal With Prejudice Was Improper ..........................................................7

III. Conclusion ................................................................................................7-8

Certificate of Compliance ................................................................................................9

Certificate of Service ....................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

Bryson v. News Am. Publ'ns, Inc., 672 N.E.2d 1207 (Ill. 1996) ...................................4,6

Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC, 521 F.3d 1157
(9th Cir. 2008) .......................................................................................................6

FTC v. Accusearch Inc., 570 F.3d 1187 (10th Cir. 2009) ................................................6

FTC v. LeadClick Media, LLC, 838 F.3d 158 (2d Cir. 2016) .........................................6

Huon v. Denton, 841 F.3d 733 (7th Cir. 2016) ...............................................................3,6

Jordan v. Jewel Food Stores, Inc., 743 F.3d 509 (7th Cir. 2014) ...................................2,3

Kamelgard v. Macura, 585 F.3d 334 (7th Cir. 2009) ......................................................5

Law Offices of David Freydin, P.C. v. Chamara, 24 F.4th 1122 (7th Cir. 2022) …..…....5

Lemmon v. Snap, Inc., 995 F.3d 1085 (9th Cir. 2021) .....................................................7

Lott v. Levitt, 556 F.3d 564 (7th Cir. 2009) .....................................................................5

Love v. Simmons, No. 1:22-cv-03198, 2024 WL 809107 (N.D. Ill. Feb. 27, 2024)..........3

Moody v. NetChoice, LLC, 603 U.S. 707 (2024) .............................................................6

Muzikowski v. Paramount Pictures Corp., 322 F.3d 918 (7th Cir. 2003) ........................5

Runnion ex rel. Runnion v. Girl Scouts of Greater Chi., 786 F.3d 510
(7th Cir. 2015)……………………………………………………………………...,7

Sorrell v. IMS Health Inc., 564 U.S. 552 (2011)……………………………..…..6

**Statutes and Rules**

740 ILCS 195/1 et seq. (Illinois Civil Liability for Doxing Act) ....................................1,4

765 ILCS 1075/1 et seq. (Illinois Right of Publicity Act) ............................................ 1-2

765 ILCS 1075/5 ................................................................................................................2

765 ILCS 1075/35(b)(1) ....................................................................................................3

47 U.S.C. § 230 ..............................................................................................................5–6

## I. SUMMARY OF THE ARGUMENT

The response briefs confirm that the judgment rests on premature merits determinations and unduly narrow views of Illinois law. On IRPA, Appellees recast our claim as "ads happen to sit near content," but the complaint and opening brief allege a monetization loop in which Appellees used Mr. D'Ambrosio's identity in connection with advertising and ongoing fundraising: Rajala's post functioned as the engagement hook for AWDTSG's brand and crowdfunding/subscription revenue, while Meta packaged that engagement as targeted ad inventory. That fits IRPA's text and *Jordan*'s "helps sell something" standard.

Appellees' reliance on IRPA's § 35(b)(1) "article or visual work" safe harbor cannot defeat plausibility at Rule 12 because the allegations plausibly depict a promotional instrument embedded in a monetized AWDTSG ecosystem, not a stand-alone noncommercial "work."

On the Anti-Doxing Act, the statute reaches information that can "distinguish or trace" identity together with "linked or linkable" data. In a 100,000-member, Chicago-focused group, the combination of name and face, plus a call-and-response culture to crowdsource employer and other details, plausibly alleges publication of PII with intent to harass and a reasonable likelihood of harm.

Defamation and false-light claims turn on context and juxtaposition. The ordinary AWDTSG reader could understand the thread, name and photo of Mr. D'Ambrosio followed by a sex-offender mugshot/article, as imputing criminal conduct. That is classic defamatory implication under Illinois law and not amenable to dismissal on "innocent construction" grounds. And liability is not limited to the person who pasted the mugshot, given the pleaded framing, curation, and amplification by the other defendants.

1

Section 230 does not categorically bar claims targeting Appellees' own product-design and operational choices—material contribution to the harmful presentation, bespoke features, and integration with a monetized call-out apparatus. Those are fact-intensive questions unsuitable for resolution on the pleadings. The First Amendment likewise does not insulate defamation or tortious doxing, nor does it bar ordinary product-safety duties that regulate conduct, not viewpoints.

The Seventh Circuit has consistently cautioned against resolving factual disputes at the Rule 12 stage where monetization, intent, or contextual meaning depend on a developed record. *Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509 (7th Cir. 2014), and *Huon v. Denton*, 841 F.3d 733 (7th Cir. 2016), both reversed early dismissals under comparable circumstances, underscoring that courts must accept plausible factual allegations linking online publication to commercial purpose or platform involvement.

Finally, at a minimum, dismissal with prejudice was error; Seventh Circuit practice strongly favors targeted leave to amend after a first dismissal.

## II.   ARGUMENT

**I. IRPA: "In connection with" advertising/fundraising is plausibly pled; the § 35(b)(1) "visual work" exception cannot defeat the pleadings**

**A. "Commercial purpose" is satisfied by monetization that the complaint ties to AWDTSG fundraising and Meta's ad sales**

Appellees say IRPA requires a face on a donation page or "ads-adjacent" content to be noncommercial. *See* Meta Br. (ads near content "don't count"); Spill-the-Tea Br. (no "commercial purpose"). That misreads both the statute and the allegations. IRPA makes it actionable to use identity "on or in connection with" the sale of goods or services, for advertising or promoting such

goods/services, or for the purpose of fundraising. 765 ILCS 1075/5. The complaint and Opening Brief allege a monetization loop: (i) Rajala's call-out post and the ensuing thread were instruments to drive AWDTSG's brand engagement, GoFundMe, and Patreon; and (ii) Meta monetized that engagement by selling targeted ad inventory derived from it. That is a paradigmatic "in connection with" use. *See Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 517–20 (7th Cir. 2014) (a "tribute" promoting the store's brand satisfied IRPA); *Huston v. Hearst Commc'ns, Inc.*, 53 F.4th 1097, 1100–02 (7th Cir. 2022) ("identity must help sell something").

Spill-the-Tea's temporal argument—that Rajala's post cannot relate to fundraising because campaigns pre-dated the post—fails. Fundraising here is ongoing and subscription-based; posts serve as recurring promotional instruments for AWDTSG's brand and revenue streams. Under *Huston*, it is enough that the use helped effectuate the commercial aim. *See id.*

Moreover, the monetization allegations here do not rest on speculation. Meta's own business model relies on engagement metrics that directly convert user interactions into ad inventory value. The AWDTSG group's virality and recurring posts—using Plaintiff's likeness— are plausibly alleged to have increased both subscription revenue and targeted ad impressions. At this stage, those monetization loops are sufficient to satisfy IRPA's "in connection with" requirement.

**B. Appellees' waiver theory as to Rajala is incorrect**

The Rajala brief asserts waiver because the opening IRPA section emphasized Meta/Spill-the-Tea. But the appeal challenges the district court's *legal* construction of "commercial purpose" and its across-the-board dismissal—an issue identical as to Rajala. This Court may resolve such purely legal questions notwithstanding forfeiture concerns.

**C. The § 35(b)(1) "article or visual work" safe harbor does not defeat plausibility at Rule 12**

Rajala invokes § 35(b)(1), which exempts the use of identity to portray a person in an "article" or "visual work" that is not itself a commercial advertisement. 765 ILCS 1075/35(b)(1). *See* Rajala Br. 6–7. But the complaint plausibly alleges that the post functioned as part of AWDTSG's promotional apparatus—"house-organ" content that advanced brand engagement, donations, and subscriptions—placing it outside the noncommercial core of § 35(b)(1). Whether the post was a stand-alone "work" or a component of a monetization engine is a fact question unsuitable for Rule 12 dismissal. *Cf. Jordan*, 743 F.3d at 519–20; *Love v. Simmons*, 2024 WL 809107, at *7–9 (N.D. Ill. Feb. 27, 2024).

**II. Illinois Anti-Doxing Act: Name/face in context is PII; intent and likely harm are plausibly alleged**

This case also presents an important opportunity for the Court to clarify the reach of Illinois's newly enacted Civil Liability for Doxing Act. No reported appellate decision has yet construed the statute. A remand for factual development would advance the public interest in delineating statutory limits while ensuring victims of coordinated online harassment receive the protections the legislature intended.

Spill-the-Tea and Rajala attempt to narrow "personally identifiable information" (PII) to a full name plus confidential fields (e.g., SSN or address). *See* Spill-the-Tea Br. I.B; Rajala Br. § 4.1. That reading conflicts with the statute's text, which covers information that can "distinguish or trace" identity together with "other information that is linked or linkable," expressly including online accounts and similar context-dependent identifiers. 740 ILCS 195/5, 195/10. In a 100,000-member, Chicago-focused group, a clear facial photo and the name "Nikko," posted in a

4

"call-out" thread that invites crowd investigation into employment and history, make the person readily identifiable and facilitate further linking, which is precisely how doxing works in practice. The Opening Brief details those allegations and the group's culture.

Appellees also argue we failed to allege intent or likely harm. *See* Rajala Br. §§ 4.2–4.3 (leaning on criminal stalking cases). But the civil statute asks whether PII was published with intent to harass and with knowledge or reckless disregard that the target would be reasonably likely to suffer enumerated harms (including stalking and harassment). 740 ILCS 195/10, 195/15. The complaint alleges a group practice of exposing targets for collective sanction; the immediate juxtaposition with a sex-offender article; and foreseeable consequences from virality in a local forum—easily meeting plausibility.

### III. Defamation and False Light: The thread's juxtaposition states a claim; liability is not confined to the literal poster; per quod damages are adequately pled in the alternative

**A. Context and juxtaposition defeat "innocent construction" at the pleading stage.**

Meta insists that because the mugshot/article is about someone else, the only reasonable reading is non-defamatory. *Meta Br.* I.B.1–2. Illinois law looks to the whole publication and how an ordinary reader would understand it. *Bryson v. News Am. Publ'ns, Inc.*, 672 N.E.2d 1207, 1220–21 (Ill. 1996). A reasonable AWDTSG reader, encountering Plaintiff's name/photo and accusations followed immediately by a sex-offender mugshot and article in the same thread, could understand the juxtaposition to accuse Plaintiff of criminal sexual conduct, defamation per se. *See Lott v. Levitt*, 556 F.3d 564, 568–70 (7th Cir. 2009) (defamation by implication); *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 924–26 (7th Cir. 2003). That plausible reading defeats dismissal.

**B. Liability extends beyond the literal mugshot-poster where others framed, curated, and amplified the implication**

5

Rajala says she cannot be liable because she did not post the mugshot. *Rajala Br.* § 2.1. But the complaint alleges she set the frame and that AWDTSG administrators curated and amplified the thread with knowledge of the implication—supporting false-light and conspiracy theories. *See Law Offices of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1128–31 (7th Cir. 2022) (context matters in distinguishing fact from opinion and in implication); *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 207–08 (Ill. 1992) (false light overlaps defamation when a false, highly offensive impression is conveyed).

### C. Alternatively, per quod damages are sufficiently alleged

Meta asserts a failure to plead special damages. *Meta Br.* I.B.2. But at Rule 12, a per quod claim survives with plausible allegations of actual harm; precise ledgers are not required. *Kamelgard v. Macura*, 585 F.3d 334, 341 (7th Cir. 2009). The complaint alleges reputational injury, emotional distress, and professional harm from the viral, localized thread—more than enough at this stage.

### IV. Section 230: Appellees' conduct-based design and operational choices are not categorically immune; dismissal on § 230 at Rule 12 is premature

Appellees try to recast every claim as treating them "as publishers." *Spill-the-Tea Br.* II; *Meta Br.* II. Not so. Several claims target non-publisher conduct, including: Meta's design and deployment of features (anonymous posting, ranking, moderator tooling) that foreseeably weaponized call-outs; AWDTSG's curation and operational integration of such posts with donations/subscriptions; and negligent entrustment of high-amplification tools to known bad actors. Those allegations plausibly plead that Appellees "developed" or materially contributed to the harmful presentation beyond passive hosting. *See Roommates.com*, 521 F.3d at 1166–68; *LeadClick*, 838 F.3d at 174–76; *Accusearch*, 570 F.3d at 1197–1201.

Meta's authorities largely address generic ranking/hosting and do not resolve whether bespoke feature design and operational integration with a monetized call-out apparatus can amount to content "development" or material contribution. That is a fact-intensive question not suited to Rule 12. *See Huon v. Denton*, 841 F.3d 733, 742–44 (7th Cir. 2016). This Court should not affirm on § 230 grounds where the allegations, taken as true, plausibly place Appellees outside the statute's core.

The Seventh Circuit's reasoning in *Huon* remains directly applicable: Section 230 does not bar claims when a platform materially contributes to the creation or development of unlawful content. While *Moody v. NetChoice* reaffirmed deference to editorial discretion, it did not immunize conduct-based design choices that create or amplify tortious harm. These distinctions warrant discovery rather than dismissal.

## V. First Amendment: These claims regulate tortious conduct and unprotected defamation/doxing, not viewpoints.

Appellees' First Amendment arguments (echoing their § 230 positions) fail because the claims regulate conduct (product design, negligent entrustment, operational integration) and unprotected categories (defamation/doxing). *See Bryson*, 672 N.E.2d at 1215–16; *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011). The Supreme Court's discussion in *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024), about platform editorial discretion in the context of state speech-regulation statutes, does not insulate platforms from ordinary tort duties aimed at unsafe product design.

Appellant's theories target the design and deployment of algorithms, not the suppression of speech or viewpoints. The claims fit comfortably within the line recognized by courts

7

distinguishing regulation of communicative *content* from regulation of *conduct* that incidentally involves speech

## VI. Negligence, Product Liability, and Negligent Entrustment (Meta): The claims target Meta's own product design/entrustment and should proceed

Meta labels everything "editorial," but the complaint pleads non-publication duties: negligent design (outrage-seeking virality), failure to warn/mitigate known misuse, and entrustment of powerful amplification tools after notice. Those theories target Meta's product choices, not the abstract existence of third-party speech. Courts allow such claims to proceed beyond Rule 12. *See Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1092–93 (9th Cir. 2021) (design-defect claim not barred simply because speech is involved). The Third Circuit has likewise allowed failure-to-warn/negligent design claims centered on a recommendation algorithm. *See Anderson v. TikTok, Inc.*, 116 F.4th 180, 187–90 (3d Cir. 2024). The district court erred in dismissing with prejudice rather than allowing targeted amendment if needed.

## VII. Unjust Enrichment: Revives with the predicate torts.

Meta argues unjust enrichment fails because the tort claims fail. *Meta Br.* I.G. If IRPA, defamation/false light, or doxing are reinstated—as they should be—unjust enrichment revives as derivative relief.

## VIII. Dismissal With Prejudice Was Improper.

Appellees defend with-prejudice dismissal. *Spill-the-Tea Br.* IV; *Meta Br.* IV. But any perceived pleading gaps (e.g., additional monetization detail, feature-design specifics, or notice facts) are readily curable. The Seventh Circuit strongly favors leave to amend after a first dismissal unless futility is clear. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi.*, 786 F.3d 510, 519–20 (7th Cir. 2015).

## CONCLUSION

This Court should reverse the Rule 12 dismissal of the IRPA, doxing, defamation (per se/per quod), false-light, negligence, negligent-entrustment, and unjust-enrichment claims, reject Appellees' § 230 and First Amendment defenses at the pleading stage as fact-bound and premature, and remand for discovery; or, at a minimum, remand with instructions to grant leave to amend.

# CERTIFICATE OF COMPLIANCE

This reply brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains **fewer than 6,500 words**, excluding the parts exempted by Rule 32(f). It complies with the typeface and type-style requirements of Rule 32(a)(5)–(6) because it has been prepared in a proportionally spaced typeface using Times New Roman 12-point font.

Dated: November 6, 2025

/s/ Aaron Walner
Counsel for Plaintiff–Appellant

## CERTIFICATE OF SERVICE

      I certify that on November 6, 2025, I filed the foregoing **Reply Brief of Plaintiff–Appellant** via the CM/ECF system, which will serve all registered counsel of record.

Dated: November 6, 2025

<u>/s/ Aaron Walner</u>
Counsel for Plaintiff–Appellant