NIKKO D'AMBROSIO,

    Plaintiff-Appellant,

        v.

META PLATFORMS INC., *et al*.,

    Defendants-Appellees.

No. 25-2231

**RESPONSE OF ATTORNEY MARC P. TRENT TO THIS COURT'S RULE TO SHOW CAUSE ISSUED ON MAY 15, 2026**

Attorney Marc P. Trent ("Mr. Trent"), by and through his attorney, James A. Doppke, Jr., hereby responds to the Rule to Show Cause issued by this Honorable Court on May 15, 2026, respectfully stating as follows:

1.      In its May 15, 2026 Decision, this Court required Plaintiff-Appellant Nikko D'Ambrosio ("Mr. D'Ambrosio"), attorney Aaron Walner ("Mr. Walner"), and Mr. Trent to show cause why they should not face sanctions for certain conduct in this matter. This Court specifically ordered Mr. Trent to show cause why he should not be sanctioned in connection with the appeal of the dismissal of Plaintiff-Appellant's claims against Defendants Abbigail Rajala and her parents, and for suggesting, at oral argument, that Plaintiff-Appellant may not have sent a certain text message to Defendant Abbigail Rajala.

2.      Mr. Trent has been licensed to practice law in Illinois since 2016, and he has never been disciplined in Illinois or any other jurisdiction.

3.      Mr. Trent regrets that his conduct has been questioned in this matter. However, he will, in the instant response, demonstrate to this Court that he has not engaged

in sanctionable or otherwise improper conduct; and that his conduct in this matter has at all times been in good faith and in accordance with professional standards.

A.     **Circumstances of the Appeal of the Dismissal of Plaintiff-Appellant's Claims Against the Rajalas**

4.      On May 13, 2025, the District Court entered an order granting the Rajala Defendants' Rule 12(b)(6) motion to dismiss Plaintiff-Appellant's Second Amended Complaint against all defendants.

5.      Mr. Trent represented Plaintiff-Appellant in the District Court. However, he was not personally involved in any work in connection with this appeal until shortly before the February 13, 2026 oral argument. Plaintiff-Appellant and Mr. Walner, who at that time was a salaried employee of Mr. Trent's firm, assumed responsibility for the appeal, as reflected in the Docketing Statement (Dkt. # 13): "[Plaintiff] is represented on appeal by Aaron Walner of the Trent Law Firm…" (p. 2). Mr. Walner wrote Plaintiff's brief, filed it, and signed the certificates of compliance and service. Mr. Walner's name appears on those certificates; Mr. Trent's does not. Mr. Walner's signature appeared on Plaintiff's brief as filed on September 2, 2025 (Dkt. #14). In response to this Court's Brief Deficiency Letter of September 3, 2025 (Dkt. #15), Mr. Walner filed a motion to submit a corrected brief (Dkt. # 16). This Court denied that motion by order dated September 5, 2025 (Dkt. #17), but it allowed Plaintiff leave to file a further corrected brief by September 12. That brief, too, contained Mr. Walner's signature (Dkt. #19). Mr. Trent had no involvement in the foregoing events, or in the preparation or filing of the brief.

6.      In so stating, Mr. Trent does not seek to abjure his responsibility as Mr. Walner's employer during the time of that employment.[1] However, he respectfully states that Mr. Walner was and is an experienced attorney, having been licensed to practice law in Illinois in 2004 (approximately 12 years before Mr. Trent himself was licensed). His experience with Mr. Walner prior to this case did not suggest that Mr. Walner required intense or intensive supervision. Mr. Trent was aware that Plaintiff-Appellant and Mr. Walner were pursuing the instant appeal, and he reasonably relied on Mr. Walner to ensure that they did so within, and with attention to, professional norms.

7.      Upon his later review of this matter, though, Mr. Trent discovered that he could and should have supervised Mr. Walner's work more carefully, and he sincerely regrets not having done so. For example, Mr. Trent now understands that Mr. Walner was using his (Mr. Trent's) PACER credentials throughout the case without his knowledge or permission, making it appear that Mr. Trent was filing pleadings or other documents in this matter, when in fact it was Mr. Walner who was doing so, as evidenced by Mr. Walner's signature appearing on the pleadings themselves (*see, e.g.*, Dkt. #s 19, 28, 40, 44). Mr. Trent did not file an appearance in this matter or otherwise undertake any action in relation to it until it became necessary for him to do so shortly before the oral argument.

---

[1] Nor does Mr. Trent dispute that his firm's website advises visitors, and potential clients, that the firm uses artificial intelligence as part of its delivery of legal services to clients. As the site indicates, Mr. Trent aims to use AI tools in order to enhance document review, refine legal strategies, and assist in client communication. Mr. Trent received guidance in creating his approach from Magister AI Advisors LLC, a firm operated by former Silicon Valley professionals who focus their work on assisting law firms and staff in learning and implementing best practices in the use of AI tools. Between October 2024 and December 2025, Mr. Trent employed the two founders of Magister (on a full-time basis) to conduct training, and to consult with his firm, on responsible AI use. Mr. Trent's goal was, in part, to assist his employees and contractors in avoiding any unchecked or reckless use of AI tools, and instead to use the tools to promote efficiency and efficacy. That training occurred while Mr. Walner was employed at Mr. Trent's firm, and Mr. Trent believes that Mr. Walner availed himself of it.

8.       Mr. Trent also now understands and respects this Court's ruling to the effect that the claims against the Rajalas lacked merit, and that the district court's dismissal of those claims should not have been the subject of an appeal before this Court. Again, Mr. Trent respectfully denies that he himself caused the appeal of those claims to be filed or pursued. He did not create, write, or file any arguments in the brief that suggested or implied that any of the claims against the Rajalas were or should be appealable. He had no involvement with the Doxing Act arguments that this Court found to contain "fictitious quotations and misstatements of the law" that could not "form the basis of a non-frivolous appeal." May 15, 2026 Decision, pp. 29-30.[2]

9.       Mr. Trent thus respectfully submits that he did not, within the meaning of Rule 11, "sign[ ], file[ ], [or] submit[ ]" the briefs filed before this Court in this matter. He did not review the briefs or other documents before Mr. Walner filed them, as Mr. Walner was fully handling the appeal, and he would have argued it had he remained in Mr. Trent's employ. Mr. Trent did not entrust the drafting of the briefs to Mr. Walner with a view to signing or presenting them himself, *see M.T. Real Est. Inv. Inc. v. Servis One, Inc.*, No. 25-01372, 2025 WL 3771490, at *3 (D. Nev. Dec. 30, 2025), citing *Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120, 125 (1989). He did not develop the theories or arguments contained within the briefs; Mr. Walner did that, and by the time Mr. Trent was called upon to review

---

[2] Mr. Trent did, as he stated at oral argument, review the briefs as part of his preparation for oral argument in this matter after Mr. Walner's employment ended. In doing so, he sought to concentrate on areas into which he believed this Court would most likely inquire, which included principally the claims against Defendant Meta. The purpose of his review was to reacquaint himself with the matter (having spent the previous year working on other matters), and to become as familiar with the arguments presented in the briefs as he could within a short time frame. He did not review the citations in the brief for accuracy or authenticity. He believed – based on Mr. Walner's years of experience, and based on the AI-related training and services Mr. Trent had provided for his firm – that Mr. Walner would have signed and filed briefs before this Court only if they contained truthful information and verified citations.

them, it was too late to amend them. Mr. Trent also lacked Mr. D'Ambrosio's authority to dismiss the appeal pursuant to Rule 42(b)(2) of the Federal Rules of Appellate Procedure.

10.     Mr. Trent recognizes that Rule 11 also requires that lawyers not present to a court a pleading, written motion, or other paper by "later advocat[ing]" it. Fed.R.Civ.P. Rule 11(b). The Advisory Committee's comments to the 1993 amendments to the Rule note that "a litigant's obligations with respect to the contents of...papers are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions *after learning that they cease to have any merit*" (emphasis added). Here, Mr. Trent had not learned that the claims in this appeal had "cease[d] to have any merit" at the time that he was reviewing the briefs and preparing for oral argument. The prohibition on "later advocat[ing]" is applicable where a lawyer, without filing a new pleading, continues to advocate that which is known to be violative of Rule 11 in a different pleading. For example, where "a party urges in federal court the allegations of a pleading filed in state court" following the removal of the action from state to federal court, the party can be found to have "present[ed]" the state court allegations to the federal court even if no new pleading was filed. *See* Fed.R.Civ.P. Rule 11(b), Notes of Advisory Committee on Rules – 1993 Amendment; *Sofaly v. Portfolio Recovery Services, LLC*, 155 F.4th 289 (2025).

11.     Nothing akin to that happened here. Mr. Trent did not present, recite, or rely upon any fictitious quotations or misstatements of law contained in the Doxing Act section of the opening brief, the specific material this Court identified as sanctionable (*see* Decision, pp. 17-21). When questioned at oral argument regarding the brief's citation to *FTC v.*

*Accusearch, Inc.*, Mr. Trent candidly acknowledged that he could not locate supporting language, and that he did not have the authority before him.

12.     The undersigned has not located any authority suggesting that a lawyer who presents oral argument based on briefs drafted and filed by another lawyer, without knowledge that the briefs contain any of the infirmities listed in Rule 11(b), can be said to have "later advocated" the improper material within the meaning of Rule 11. Mr. Trent had no knowledge of any material in the briefs that was false, improperly created by artificial intelligence, or otherwise improper, unwarranted, or frivolous. At oral argument, Mr. Trent focused his advocacy on the Illinois Right of Publicity Act claims and algorithmic-design theories against Meta Platforms and the STT defendants, describing those claims as the "primary paths to reversal." He did not present argument directed at sustaining the claims against the Rajalas that form the basis of this Court's frivolousness finding.

13.     In light of the foregoing, Mr. Trent respectfully requests that this Court determine not to sanction him in relation to the merits of this matter under these circumstances.

**B.     Mr. Trent's Conduct Before This Court**

14.     Mr. Trent appeared at the February 13, 2026 oral argument in this matter not because he had originally planned to do so, but because as of February 8, 2026, Mr. Walner had separated from his employment at Mr. Trent's firm. Mr. Trent understood it to be his professional obligation to appear at oral argument, even though he had not previously appeared in the case or taken any action in connection with it.

15.     During the oral argument, this Court engaged in a colloquy with Mr. Trent concerning a text message that appeared in an attachment to Plaintiff's Second Amended

Complaint. The text message was a part of a Facebook post that, Plaintiff alleged, was posted by Defendant Abbigail Rajala. As part of the post, Plaintiff alleged, Rajala suggested that Plaintiff sent her the text message, which used foul and derogatory language toward Rajala.

16.     In response to this Court's questioning concerning the text message, Mr. Trent first stated that there was "no evidence" that Plaintiff had sent the message, but rather that it had been assumed that he had. This Court pointed out, as it later did in its May 15, 2026 Decision, that the authorship of the text message had never been contested before the district court or before this Court. Mr. Trent said, accurately, that the matter had been dismissed before any discovery took place, and he suggested that as a result, no dispute concerning the authorship of the text message had occurred. This Court again noted that the district court had "made the point" that Plaintiff had not disputed authorship[3], and it asked Mr. Trent if he was saying that Ms. Rajala had "made up" the text. Mr. Trent replied that it was "plausible" that she had. Upon further inquiry as to the basis for that statement, Mr. Trent stated his intent to avoid disclosing information that would be protected by the attorney-client privilege. This Court indicated that it did not want Mr. Trent to make such a disclosure, and it directed him to consider the possibility of sanctions. Mr. Trent again stated that there was "no evidence" that Plaintiff had sent the text message, and that the attorney-client privilege was implicated. In a further colloquy, this Court noted that the complaint filed before the district court did not allege that the text message was false.

17.     During the above exchange, Mr. Trent had conflicting professional obligations. He had, of course, a duty to be candid toward this Court. He also had a duty to

---

[3] In its May 13, 2025 Memorandum Opinion and Order, the district court noted, in a footnote, that Plaintiff "does not dispute that he sent th[e] message". *D'Ambrosio v. Meta, et al.*, 24 CV 678, Dkt. #99, p. 4, fn. 4.

preserve the attorney-client privilege by not disclosing confidential client communications, and to avoid using or revealing any information relating to his representation of Plaintiff except that information which may fall into one of several narrow categories of disclosable information pursuant to Rule 1.6 of the Illinois Rules of Professional Conduct. A client may consent to the use or revelation of information, and on some occasions, the client's authorization can be considered to be implied (as with the revelation of information that must be used in order to accomplish the client's objectives). Rule 3.3 of the Illinois Rules of Professional Conduct provides that a lawyer may be required to disclose to a tribunal information otherwise protected by Rule 1.6 under certain circumstances not present here.

18. As Mr. Trent articulated to this Court, he was unable to respond to its inquiry in a manner that would have been consistent with Rule 1.6 and the attorney-client privilege. Further, as he stated, the authorship of the text message had not been litigated before the district court. Those proceedings had focused on determining whether Plaintiff had stated a claim, and not on testing the available evidence. Given that, Mr. Trent attempted to advise this Court, in good faith and without divulging privileged or confidential information, of his belief concerning what the evidence could or would ultimately show if further proceedings were to occur. However, it was also true, as this Court noted, that Plaintiff had not pled or briefed any facts concerning the authorship of the text, and that further proceedings were by no means guaranteed to give rise or substance to allegations concerning the authorship of the text. Mr. Trent did not and does not deny either of those facts. He respectfully submits that his answers to this Court's questions were shaped by his attempts to conform his conduct to the Rules and to the preservation of the attorney-client privilege.

8

19.     Mr. Trent respectfully concedes that he spoke inartfully at oral argument concerning the text message, and that in doing so he may have conveyed to this Court that there existed within the record of this case a dispute concerning the authorship of the message. He should have been more mindful of the limited nature of the evidentiary record in this matter, and he should not have alluded in any fashion to any authorship issue.

**C.     Sanctions**

20.     Mr. Trent respectfully denies that he has engaged in sanctionable conduct in this matter. He did not himself institute these proceedings, or pursue them other than by appearing at the oral argument. He appeared to ensure that Mr. D'Ambrosio would not be unrepresented following Mr. Walner's departure from his firm. This Court should therefore not conclude that Mr. Trent engendered or furthered any frivolousness in connection with this appeal within the meaning of Rule 38 of the Federal Rules of Appellate Procedure. Under Rule 38, an appeal is frivolous "'when the result is obvious or when the appellant's arguments are wholly without merit.'" *Ashkin v. Time Warner Cable Corp.*, 52 F.3d 140, 146 (7th Cir.1995). This Court has at times also required some evidence of bad faith before finding that sanctions should be imposed. *Flaherty v. Gas Research Inst.*, 31 F.3d 451, 459 (7th Cir.1994); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327 (7th Cir. 1995).

21.     In *Tomczyk v. Blue Cross & Blue Shield United of Wisconsin*, 951 F.2d 771 (7th Cir. 1991), this Court imposed sanctions pursuant to Rule 38 on the plaintiff's two attorneys, finding that they had engaged in bad faith conduct. This Court held:

> We previously have held that misrepresentations of controlling law and disingenuous arguments, "because they postpone resolution of the real issues and cause delay, can be evidence of bad faith under the second part of the Rule 38 analysis." *Williams [v. United States Postal Serv.]*, 873 F.2d at 1075 (quoting *Beam v. IPCO Corp.*, 838 F.2d 242, 249 n. 5 (7th Cir.1988)). Such

offenses were mainstays of Tomczyk's brief. Many of the cases cited to support Tomczyk's claims were "neither controlling nor relevant." *Morris v. Jenkins*, 819 F.2d 678, 681 (7th Cir.1987). When the law disfavored Tomczyk's case, it was ignored, glossed over, or misstated. Puffery was proffered as fact. Her attorneys presented the record "in a thoroughly misleading and unprofessional fashion," further demonstrating frivolousness. *Borowski v. DePuy, Inc.*, 850 F.2d 297, 306 (7th Cir.1988) (citation omitted). The "entire manner in which [this] appeal has been pursued justifies sanctions." Id. at 305-06.

*Tomczyk*, *id*. at 779.

22. Mr. Trent respectfully states that he engaged in no conduct that resembled that of the attorneys in *Tomczyk*. He did not misrepresent any case law to this Court or cite irrelevant or non-controlling case law, and he did not cause any delay in the resolution of this matter. While this Court took issue with the manner in which Mr. Trent characterized the text message posted by Ms. Rajala – and while Mr. Trent sincerely regrets that – he did not "present [ ] the record 'in a thoroughly misleading and unprofessional fashion.'" *Tomczyk*, *id*. Rather, even as he referred to the "plausib[ility]" of an evidentiary dispute concerning the authorship of the text message, he acknowledged that nothing had been pled or presented at the district court, or in the briefing in this matter, regarding that issue.

23. It would also not be appropriate to sanction Mr. Trent under 28 U.S.C. § 1927, which forbids attorneys from "multipl[ying] the proceedings in any case unreasonably and vexatiously." This Court's past decisions have interpreted the term "vexatious" to denote either subjective or objective bad faith. *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1186 (7th Cir. 1992), citing *Ordower v. Feldman*, 826 F.2d 1569 (7th Cir.1987) and *In re TCI Ltd.*, 769 F.2d 441 (7th Cir.1985). Intentional ill will or reckless conduct can constitute vexatious conduct, *see Ordower*, 826 F.2d at 1574, and bad faith can be demonstrated by subjective

evidence of malice, objective evidence of reckless conduct, or indifference to the law, *i.e.*, a "serious and studied disregard for the orderly process of justice." *Walter v. Fiorenzo*, 840 F.2d 427, 433 (7th Cir.1988); *TCI*, 769 F.2d at 445.

24. Here, this Court should not conclude that Mr. Trent acted in bad faith within the meaning of Section 1927 and its own precedent. He had no involvement in filing or pursuing the appeal, and he took no action in relation to it until that action became necessary, just days before the oral argument. His appearance at the oral argument was meant to ensure that Mr. D'Ambrosio would not be left unrepresented, which he reasonably believed to be consistent with his professional duties under, *inter alia*, Rule 1.16 of the Illinois Rules of Professional Conduct. There is no evidence that he was motivated by malice, or that his conduct was so objectively reckless that it was "vexatious" or that it tended to, or did, multiply the proceedings. Nor did Mr. Trent exhibit a "serious and studied disregard for the orderly process of justice." He prepared himself to argue the case, and he did so. He engaged with this Court's questioning, and he responded in good faith.

25. Mr. Trent respectfully requests that, if this Court deems it appropriate, he be afforded the opportunity to provide evidence at a hearing concerning his involvement in this matter as described herein, and his intentions as he engaged in this matter in the limited way that he did.

WHEREFORE, Marc P. Trent respectfully prays that this honorable Court discharge the Rule to Show Cause entered on May 15, 2026, or, alternatively, that it afford Mr. Trent an evidentiary hearing prior to determining whether to impose any sanction pursuant to the Rule to Show Cause; and that it order such other and further relief that it deems fair and just.

Respectfully submitted,

/s/ James A. Doppke, Jr.

BY: James A. Doppke, Jr.
Attorney for Marc P. Trent

CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ James A. Doppke, Jr.

BY: James A. Doppke, Jr.
Attorney for Marc P. Trent

James A. Doppke, Jr.
Robinson, Stewart, Montgomery & Doppke, LLC
159 N. Sangamon Street, #327A
Chicago, IL 60607
(312) 676-9878
jdoppke@rsmdlaw.com